## GEORGE WELLER, Respondent, v. MISSOURI LUMBER & MINING COMPANY, Appellant.

### Springfield Court of Appeals, December 11, 1913.

1. **DEMURRER TO PLEADING: What is Admitted by.** A demurrer to a pleading admits facts well pleaded and all inferences of fact that may be fairly and reasonably drawn therefrom.

2. **———: What is not Admitted by.** A demurrer to a pleading does not admit conclusions of the pleader on the facts of the cause of action.

3. **———: Relief Sought not Warranted by Petition: Not Ground for Demurrer.** A demurrer will not lie in actions at law because the prayer for relief is not warranted by the allegations of the petition.

Weller v. Lumber Co.

4. ————: **Allegations of Petition: Conclusions of Pleader.** In an action for damages because of alleged obstructions placed in a navigable stream by defendant, averments in the petition that plaintiff's mill was rendered entirely worthless and that he was forced at great expense to remove it to another place, *held* conclusions of the pleader, especially when plaintiff further alleges in the petition that the obstructions were temporary and removable.

5. **OBSTRUCTING NAVIGABLE RIVERS: Public Nuisance.** To obstruct a navigable river is to commit a public nuisance.

6. **PUBLIC NUISANCE: Recovery Because of: Averments and Proof: "Special Damages": Meaning of.** In an action for damages because of the maintenance of a public nuisance, the person seeking to recover therefor must both allege and prove special damages. And it is not sufficient to warrant a recovery that he suffers a greater degree of injury merely. The injury must be of a different kind.

7. **PUBLIC AND PRIVATE WAYS: Obstructing: Grounds for Action.** In an action for damages for obstructing a public way, the special injury to the person damaged is the ground for the action. As to obstructing a private way, the obstruction itself gives the right of action.

8. **PETITION: Need not Allege Measure of Damages: To be Covered by the Instructions.** The petition need not allege the measure of damages. That is to be regulated by the court in instructions.

9. **PUBLIC NUISANCE: Obstructing Navigable River: Petition Held Sufficient.** In an action for damages occasioned by maintaining an obstruction in a navigable river, petition examined and *held* sufficient to sustain an action for maintaining a public nuisance; and that the allegations sufficiently showed special injuries to plaintiff's property, different in kind from those suffered by the public generally.

10. **OBSTRUCTING NAVIGABLE STREAMS: Other Means of Passage: When not Defense.** Where defendant obstructed a navigable stream by placing a boom in said stream above the location of plaintiff's sawmill which prevented plaintiff floating logs in the river to his mill, it is not a defense that the slough, on the bank of which the sawmill was located, came back to the main channel of the river below the sawmill and the logs might, by artificial means, be taken up stream to the mill.

11. ————: **Damages: Measure of.** In an action for damages for maintaining a temporary obstruction in a navigable stream on account of which plaintiff was prevented from rafting logs to his sawmill, the damage recoverable is the loss the plaintiff

sustained on account of his sawmill being idle during the maintenance of the obstruction, or the cost of moving such mill, should such cost be less than the damages occasioned by the mill remaining idle.

12. DAMAGES: Lessening Damages: Duty to do so. It is incumbent on a party whose property is damaged by another to take reasonable precautions to lessen the damages as much as possible and to protect his property.

13. DAMAGES: Evidence: Pleading. Evidence of damages not alleged in the petition is not admissible.

14. INSTRUCTIONS: Allowing Larger Verdict Than Asked for: Erroneous. An instruction is erroneous which permits the jury to give a verdict for a greater sum than that asked for by the pleadings.

15. JUDGMENT: Exceeding Claim: Reversal. A judgment exceeding the amount claimed will be reversed.

16. "NAVIGABLE STREAMS": Definition: Term Covers What. A navigable stream, within the purview of the provision of the Constitution of Missouri, article one, section one, which reserves to the people the free use of all "navigable streams" leading to the Mississippi river as common highways, means a stream capable of transporting commerce in any manner in which such commerce is ordinarily conducted.

17. NAVIGABLE STREAMS: Question for the Jury. Whether or not a stream is navigable is a question for the jury.

18. ————: Question for the Jury. That poles and other contrivances were needed to push logs along a stream does not establish the fact that the stream was not navigable. This is a question for the jury.

19. OBSTRUCTING NAVIGABLE STREAMS: Action: Defenses. That defendant or his predecessors had cleaned out the channel of a stream and improved its navigability, is not a defense in an action for obstructing such navigable stream, nor would that fact give defendant any greater rights to the use of the stream than were enjoyed by the general public.

Appeal from Carter County Circuit Court.—*Hon. W. N. Evans*, Judge.

REVERSED AND REMANDED.

*L. F. Dinning, L. B. Shuck, Garry Yount* and *W. J. Orr* for appellant.

(1)  Waters to be navigable must be so far navigable or floating in the natural state and in their ordinary capacity as to be of public use in the transportation of property.  Waters which can be made navigable or floatable only by artificial means are not public highways.  McKinney v. Northcutt, 89 S. W. (Mo.) 351, and authorities cited; Holden v. Mfg. Co., 65 Me. 215; Moore v. Sanborne, 2 Mich. 519; Ten Eyck v. Warwick, 75 Hun, 562; Haines v. Hale, 17 Ore. 180; Gould on Waters (3d Ed.), 107; Farnham on Waters No. 25.  (2)  The person suing for the obstruction of a navigable water must show that he has sustained a special injury differing not merely in degree, but in kind, from that sustained by the general public.  Atlee v. Union Rocket Co., 21 Wall. 389; River Nav. Co. v. Railroad, 87 Ala. 154; Coburn v. Ames, 52 Cal. 387; Low v. Kniwlton, 26 Me. 128; Breed v. Lynn, 126 Mass. 367; Potter v. Railroad, 95 Mich. 389; Aspin v. Bowman, 83 Wis. 54.  (3)  Prospective or speculative damages are not allowed for a temporary nuisance.  Taylor v. Macguire, 13 Mo. 517; Wilson v. Weil, 67 Mo. 399; Saunders v. Brosius, 52 Mo. 50; Squires v. Chillicothe, 89 Mo. 226; Paddock v. Somes, 51 Mo. App. 320; Van Hoozier v. Railroad, 70 Mo. 145; Brown v. Railroad, 80 Mo. 457.  (4)  It is the duty of the injured party to make reasonable effort to lessen or avoid damages resulting from the wrong complained of.  Douglas v. Stephens, 18 Mo. 362; Fisher v. Goebel, 40 Mo. 475; Waters v. Brown, 44 Mo. 302; Harrison v. Railroad, 88 Mo. 302; Peck v. Metal Co., 96 Mo. App. 212.

No brief for respondent.

FARRINGTON, J.—This is an action for damages alleged to have been suffered by plaintiff as operator of a sawmill by reason of the obstruction of a navigable stream in which plaintiff floated logs.  The trial resulted in a verdict for plaintiff, the jury assess-

ing his damages at the sum of $550, and defendant has appealed.

The petition alleged that plaintiff, in November, 1911, was engaged in the operation of a sawmill on the banks of the Current river, a navigable stream, and that in the conduct of said business he was engaged in floating logs in said river to his sawmill; that all the logs received by plaintiff at his sawmill were either rafted or floated down said river to said mill, where the same were taken out of the water and manufactured by plaintiff into lumber for sale upon the various markets. It was alleged that defendant company was likewise engaged in floating logs and ties in said river, and that to facilitate its business and to enable it more easily to remove said logs from the water, defendant had constructed and maintained upon and across said river at various points near the location of plaintiff's sawmill certain obstructions for the purpose of arresting the progress of logs, said obstructions being commonly called booms, and which were so arranged and located in said river as to be removable, and when not in use could be so placed as not to interfere with the navigation of said river. That in November, 1911, defendant had constructed upon and across the waters of said river, above the location of plaintiff's mill, a certain boom for the purpose of arresting the progress of logs, and wilfully and maliciously, with the intent to injure plaintiff and deprive him of the right to float logs in said river to his sawmill, did so place said boom as to prevent plaintiff floating logs in said river to his sawmill, ''thereby rendering his said mill entirely worthless, and causing plaintiff, at great expense to himself, to remove said mill to another place, where he could obtain the necessary logs for the operation of said mill.'' It is alleged that the expense of removing the sawmill to another place was $500 for which actual damages judgment is asked. Punitive damages in the sum of $2000

is then prayed for by reason of the willful and malicious and unlawful obstruction of said river.

After the court had overruled a demurrer to the petition, defendant filed as its answer a general denial.

Appellant makes the point that the petition does not state facts sufficient to constitute a cause of action and that its demurrer thereto should have been sustained.

Now it is a familiar principle that a demurrer to a pleading admits facts well pleaded and all inferences of fact that may be fairly and reasonably drawn therefrom (American Brewing Co. v. City of St. Louis, 187 Mo. 367, 86 S. W. 129), but not conclusions of law, nor conclusions of the pleader on the facts of the cause of action (Donovan v. Boeck, 217 Mo. 70, 116 S. W. 543); it admits the truth of the facts stated in the pleading against which it is leveled and invokes the judgment of the court thereon as to the law concerning plaintiff's right of recovery (Pidgeon v. United Rys. Co., 154 Mo. App. 20, 133 S. W. 130). On demurrer, all reasonable inferences are indulged in favor of the pleading. [Mason v. Deitering, 132 Mo. App. l. c. 35, 111 S. W. 862.] A demurrer does not reach a prayer for relief (Whitmore v. Yeager, 3 Mo. App. 582). In actions at law, a demurrer will not lie because the prayer for relief is not warranted by the averments of the petition; the court may grant any relief consistent with the case made by the evidence and embraced within the issues. [Baker v. Railway Co., 34 Mo. App. l. c. 110; Carthage Natl. Bank v. Poole, 160 Mo. App. l. c. 143.] The averment of the petition under consideration that plaintiff's mill was rendered entirely worthless and that plaintiff was caused at great expense to remove it to another place where he could obtain the necessary logs for its operation, was a conclusion of the pleader; palpably so when it is observed that plaintiff had just alleged that the

booms were *temporary* structures so arranged and located in the river as to be *removable* and that when not in use they could be so placed as not to interfere with the navigation of said river. Plaintiff charged an obstruction of a navigable river, i. e., a public nuisance (Georgetown v. Alexandria Canal Co., 12 Pet. 91, 9 L. Ed. 1012), and this charge was admitted by the demurrer. [Lepire v. Klenk, 134 N. W. (Mich.) 1119, 1120.] Now it is held that in an action for damages because of the maintenance of a public nuisance, special damages must be averred and proved. [Smith v. McConathy, 11 Mo. 517.] The rule as announced in 29 Cyc. at page 327, is as follows: "Where a private individual has sustained any particular and special injury over and above that sustained by the public generally, as a direct result of an obstruction" (of navigable waters) "he may maintain an action to recover damages therefor; but if he has received no speical damage an action cannot be brought by him." Again, at page 328: "In an action by a private individual, the complaint must allege some special injury which he has sustained of a different character from the general injury to the public." The reason special damages must be alleged is that the law does not presume or imply damage to any particular individual from the public offense. [Hart v. Evans, 8 Pa. 13.] The gravamen of an action for obstructing a *private* way is the obstruction; in case of a *public* way it is the special injury to the plaintiff. [Powell v. Bunger, 91 Ind. 64, 67; Baker v. Boston, 22 Am. Dec. (Mass.) 421, 425; Platte & Denver D. Co. v. Anderson, 6 Pac. (Colo.) 515; cases cited in 4 L. R. A. 212, note.] It is not enough that the injury to him is greater in degree than the public generally suffer, if it be the same in kind. [Thelen v. Farmer, 30 N. W. (Minn.) 670.] It must be different in kind. [Pedrick v. Railroad, 55 S. E. (N. C.) l. c. 881; see, also, generally, Berry

v. Railroad, 214 Mo. l. c. 605, 114 S. W. 27; Scheurich v. Light Co., 109 Mo. App. l. c. 421, 84 S. W. 1003.]

In the case of Ireland v. Bowman, 114 S. W. (Ky.) 338, logs belonging to the owner of a mill on a navigable stream were caught and damaged by a dam constituting a nuisance and it was held that the measure of damages was the deterioration of the logs while detained, the value of labor in getting the logs over the dam, and any expense incurred by reason of the dam, and any diminution in the value of the log owner's property by reason of the nuisance.

In the case of Creech v. Humptulips B. & R. I. Co., 79 Pac. (Wash.) 633, the petition, in an action to recover damages caused by the obstruction of a navigable stream or slough, alleged generally that plaintiffs were thereby greatly delayed in marketing their logs, were put to great expense by reason of the obstruction, were unable to use their logging engine which was on the land, were unable to keep the hired help in their camps employed, and had been damaged in the sum of $500, and would be damaged thereafter in the sum of twenty-five dollars per day until the obstruction was removed. It was held that the petition, in the absence of a demand for a bill of particulars or a motion to make the same more definite and certain, was sufficiently specific to entitle plaintiffs to recover for the idleness of their logging engine and men, and for damages in being compelled to discharge men and employ others at a higher rate of wages.

In the case of Page v. Lumber Co., 55 N. W. (Minn.) 608, 609, this language is used: "No general rule can be laid down for determining whether a pleading shows, or whether the evidence produced upon a trial tends to establish, a cause under the principle or rule that, to maintain an action for a wrong or injury arising out of the maintenance of a public nuisance, an individual must have sustained special injury differing in kind, not merely in degree or extent from that

sustained by the general public; and we shall not attempt it.'' In holding that particular case to be within the rule, the court overruled the case of Swanson v. Boom Co., 44 N. W. (Minn.) 986, 7 L. R. A. 673, a case somewhat similar to the one at bar.

Has the plaintiff shown in his petition that he sustained special injury to his property, different from that which would be suffered by the public generally? If he has, he has stated a cause of action; otherwise, he has not. [Bailey v. Culver, 84 Mo. l. c. 538.] In determining this question in this particular case, it should be borne in mind that it is not necessary that the petition allege the *measure of damages* as that is a matter to be regulated by the court in the instructions. [St. Louis Trust Co. v. Bambrick, 149 Mo. 560, 51 S. W. 706.] This petition alleges that plaintiff was engaged in operating a sawmill on the banks of the Current river and in floating logs down said river to his sawmill and that all the logs received at his sawmill were either rafted or floated down said river to said sawmill; that defendant so placed a boom in said river above the location of plaintiff's sawmill as to prevent plaintiff floating logs in said river to his sawmill. We think this was a sufficient allegation of special injury to the plaintiff—different in kind from that suffered by the general public. This was an allegation that the ingress to plaintiff's mill was entirely cut off by the maintenance of the obstruction. It is true (as shown by the evidence) that the slough on the bank of which the sawmill was located came back to the main channel of the Current river below the sawmill. This, however, was not such a highway left open to the plaintiff as to be a practical way to get logs to his sawmill for they would not float upstream and some artificial force would be required. He was entitled to float them down the stream (it being admitted by the demurrer that it was navigable) and that way was entirely obstructed.

As will be found upon examining the authorities in this country, the courts are divided on the question as to what is sufficient allegation and what is sufficient proof of *special* injury, where the litigation grows out of an obstruction of a public highway, especially, a navigable stream. As has been shown herein, the law is well settled that if the party complaining is damaged in the same manner—if his damage is of the same kind—as the general public, he is forbidden, on the theory of preventing multiplicity of suits, to maintain a private action for damages. If, however, he sustains some damage over and beyond the rest of the community by reason of the maintenance of a public nuisance, his private action will lie. [Givens v. Van Studdiford, 86 Mo. 149.] Many of the courts throughout the country have held that in order that a private action may be maintained for the injury caused by the obstruction of a public highway, such obstruction must be adjacent to the property of the plaintiff. This question has been thoroughly reviewed in this State in the case of The Charles H. Heer Dry Goods Co. v. Citizens Ry. Co., 41 Mo. App. 63, holding that it is not necessary that the obstruction be directly in front of or adjacent to the property of the plaintiff. The opinion in that case fully discusses the Missouri decisions on the question, and the reasoning and conclusion meets with our approval. That case was cited in Foudry v. Railroad, 130 Mo. App. l. c. 117, 109 S. W. 80. Although the Heer decision deals with an obstruction of a public highway in a city, the question is the same as is presented here, and the facts, so far as the reasoning leading up to that decision is concerned, are the same. It was shown in that case that though the obstruction was not in front of plaintiff's property, it was at such a place as would prevent customers of the plaintiff dry goods company driving with their vehicles to its store, and that there was practically no other way they could reach its store. This, the court

held, showed a *special* injury. In our case, the petition avers that this stream was the only way in which plaintiff could supply his sawmill with logs and that it was cut off by the obstruction; hence the loss to plaintiff was certainly one over and beyond that sustained by the public generally. So we say that the plaintiff in his petition does plead enough facts to show a special injury; but he draws an erroneous conclusion in his averment that the obstruction rendered his mill entirely worthless and caused him at great expense to remove it to another place, having just before alleged that the obstruction was a temporary affair and easily removable. The damages recoverable for the maintenance of such temporary nuisance would be the loss he would be able to show by reason of his mill being idle during the maintenance of the obstruction and his being prevented from floating logs to his sawmill, this being the only way, according to the petition, by which he could get logs for the operation of the mill. Permanent damages are not allowed for temporary nuisances that may be abated. [Schoen v. Kansas City, 65 Mo. App. 134.] The only theory on which it would be permissible to allow the cost of removing plaintiff's mill would be in mitigation of the damages which would have resulted to plaintiff from leaving his mill stand idle during the time the river was wrongfully obstructed, i. e., the cost of removing the mill would be less than such other damages would have been. Even as against defendant's wrong in obstructing the river, the plaintiff not only had a right but it was his duty to take any reasonable precaution to protect his property and minimize the damage. [See, Springfield Southwestern Railway Co. v. Schweitzer (decided by this court), 158 S. W. 1058, and authorities therein cited bearing on this question.]

The plaintiff, however, by his petition only alleged special damages occasioned by having to move his sawmill. He was allowed to prove that he lost $125 be-

cause a raft of logs which he was floating down the river could not be gotten by the obstruction and he was compelled to float them on down the river to another sawmill where it cost that much more to have them sawed than it would have cost to saw them at plaintiff's mill. Undoubtedly, this would have been a special damage had the petition been so framed as to admit of this proof. [Arpin v. Bowman, 53 N. W. (Wis.) 151; Potter v. Railway Co., 54 N. W. (Mich.) 956; Creech. v. Humptulips B. & R. I. Co., 79 Pac. (Wash.) 633.]

Plaintiff was also permitted to show that he had 300,000 feet of standing timber up the river to which point he moved his sawmill, and that it would cost about $900 more to work it up at that place than if he could float the logs down the river to be sawed at the old location. This was of course incompetent for the same reason, and for the further reason that there was no showing whatever how long it would have taken to cut the timber and float it down the river to the old location and saw it (the 300,000 feet) had he been permitted to float it to the old location. This proof was not admissible for the reason that unless the timber could have been cut, floated and sawed within the time the nuisance was maintained, so as to be proper damages for the maintenance of a temporary nuisance, its admission might result in the allowance of permanent damages for the maintenance of a temporary nuisance. Indeed, the plaintiff on cross-examination testified that he had run his sawmill at the old location nearly fourteen months, and that the capacity was from 4000 to 10,000 feet per day depending on the number of men employed; that only four cars of lumber (oak) had been shipped, each containing from 6000 to 10,000 feet, and that he received fourteen dollars per 1000 feet for some, sixteen dollars for some, and seventeen dollars for some; that it cost him about seventeen dollars per 1000 feet to get the lumber from the timberland to the

St. Louis market. Upon being asked to whom he sold lumber for seventeen dollars per 1000 feet, he answered, the American Car and Foundry Company, but later said they paid him twenty-five dollars per 1000 feet.

The only evidence which was admissible on the measure of damages under the averments of the petition was that concerning the expense of removing the sawmill, and the plaintiff's testimony was that this expense amounted to $150.

The petition prayed for $500 actual and $2000 punitive damages. The court, in the only instruction on the measure of damages (given at plaintiff's request) told the jury that if their verdict was for the plaintiff, his damages should be assessed at such sum as they believed from the evidence he sustained, "not exceeding, however, the sum of $1500." There was no instruction on punitive damages. The jury returned a verdict assessing plaintiff's actual damages at the sum of $550, which was fifty dollars more than the petition prayed for as to that kind of damages and which was evidently allowed on account of the jury having taken into consideration the evidence admitted which was incompetent under the petition. Defendant excepted to the instruction and preserved the question for our consideration. It has long been the settled rule of law that an instruction is improper which permits the jury to give a verdict for a greater sum than that asked by the pleadings. [Wright v. Jacobs, 61 Mo. 19; Dunlap v. Kelly, 115 Mo. App. 1. c. 616, 92 S. W. 140.] The measure of plaintiff's recovery is governed by the amount claimed and where the judgment is in excess of that amount it will be reversed. [Horton v. Railway Co., 83 Mo. 541; Beckwith v. Boyce, 12 Mo. 440; Cox v. City of St. Louis, 11 Mo. 431.]

In view of the fact that our order in this case will make it subject to retrial in the circuit court, and because appellant squarely presents the question of the

navigability of the slough on which plaintiff's sawmill was located, some discussion of the question is called for. The Constitution of Missouri, article I, section 1, reserves to the people the free use of all navigable streams leading to the Mississippi river as common highways. The law of this State, following the general trend of authority in this country, is that a stream capable of transporting commerce in any manner in which such commerce is ordinarily conducted is a navigable or floatable stream and is a public highway. In any given case, the question as to whether the stream has such capacity is one of fact for the jury to determine. The law on this subject was well declared by NORTONI J., in the case of McKinney v. Northcutt, 114 Mo. App. 146, 89 S. W. 351. We think there was sufficient testimony introduced by the plaintiff to authorize the trial court to put the case to the jury. If plaintiff's evidence is to be believed, the slough in question was originally the main channel of the river and had always continued at ordinary stages of the river to convey a part of its waters, and was capable much of the time of floating ties and logs. The mere fact that the defendant or its predecessors, being in control of the banks of the slough (except where plaintiff's sawmill stood), had cleared out the upper end of the slough so as to render it more navigable or better fitted to float logs, would not be such an artificial improvement as would disconnect the slough as a part of the navigable river. Such work would, in fact, rather improve its navigability and would benefit all persons desiring to use the river, and would certainly give the party so improving it no greater rights than were enjoyed by the general public.

Proof that to get logs to follow that arm of the river a boom was necessary, or that it was necessary to push the logs in the slough by means of poles and other contrivances, would not be conclusive evidence that the slough was not navigable as is assumed in de-

fendant's instruction No. 1 which was given by the trial court. Common experience teaches that in floating logs it is at times necessary for those in charge to use such means as is found necessary to keep the logs in that part of the stream desired.

From what has been said, it is manifest that the judgment should be reversed and the cause remanded. It is so ordered. *Robertson, P. J.,* and *Sturgis, J.,* concur.