## SETTEGAST et ux. v. FOLEY BROS. DRY GOODS CO. (No. 8973.)

Court of Civil Appeals of Texas. Galveston. June 23, 1927.

Rehearing Denied (by both parties) July 14, 1927.

**1. Landlord and tenant ⬗130(3)—Allegations of decrease in leasehold value held sufficient as against general demurrer.**

Petition *held* sufficiently to allege facts showing injury from decrease in value of a leasehold due to lessor's breach of covenant of quiet enjoyment; the objection having been by general demurrer only.

**2. Damages ⬗141—Where petition alleges facts showing injury for which plaintiff is entitled to compensation, it is sufficient.**

It is not a general requisite of pleading that a petition allege a measure of damages; hence, if facts are alleged showing pleader has sustained injury for which he is entitled to compensation, petition is sufficient.

**3. Appeal and error ⬗1068(4)—Under facts, court's submission to jury of two rules for measuring damages for breach of lease covenant held not reversible error, in view of verdict.**

Where trial court submitted to jury two issues of damages sustained because of breach of covenant of quiet enjoyment, the first being as to decreased market value of a lease and the second as to decreased value for lessee's business, lessor was not injured by double submission, since jury found diminished value same under both rules for measuring damages, and

only one of findings was included in the judgment.

**4. Landlord and tenant ⬷130(4)—Where covenant of quiet enjoyment in lease was breached, lessee's damages held not restricted to decrease in market value of property.**

Where lessor knew of use lessee was to make of leased property, and that lease was executed in reliance on the covenants of warranty and quiet enjoyment contained therein, an easement in such land interfering with the use intended entitled lessee to such damages as were the reasonable and probable result of the breach and did not restrict him to decrease in market value of lease.

**5. Landlord and tenant ⬷130(4)—Measure of damages from breach of covenant of quiet enjoyment is damage which naturally and proximately results from breach.**

The measure of damages for breach of covenant of quiet enjoyment in a lease is such damage as naturally and proximately results from the breach.

**6. Landlord and tenant ⬷130(3)—On question of damages through breach of covenant in lease, loss of future profits by deprivation of store space held admissible.**

Where lessee was deprived of use of part of store space through breach of covenant of quiet enjoyment, evidence as to future profits of the business and depreciation thereof through loss of space *held* admissible.

**7. Damages ⬷40(1)—Judgment for damages may be based on future profits of a business, where not too remote and speculative.**

Future profits of a business which can be shown with reasonable certainty are not too remote and speculative to form the basis of a judgment for damages.

**8. Landlord and tenant ⬷130(4)—Where lessee, after discovering breach of covenant that would preclude his use of part of leased premises, proceeded, on his attorney's advice, to underpin wall thereon, he was not entitled to damages for expenditure.**

Where lessee, after discovering breach of covenant of quiet enjoyment and consequent deprivation of use of part of leased premises, proceeded, on the advice of his attorney, to expend money in underpinning a wall thereon, he was not entitled to damages for the expenditure.

**9. Landlord and tenant ⬷130(4)—Where easement in property, contrary to lease covenant, precluded heightening of building wall, and hence necessitated erection of new wall, lessee's damages held to be cost of new wall.**

Where lease contained a covenant of quiet enjoyment, but an easement existed which precluded heightening of old building wall, because of which a new wall had to be constructed, lessee *held* entitled to cost of new wall as damages for breach.

**10. Damages ⬷62(4)—Lessee held not required to alter form of proposed building to decrease damages caused by breach of covenant of quiet enjoyment.**

Where breach of covenant of quiet enjoyment existed because of an easement in leased premises, lessee *held* not required to alter form of proposed building in order to decrease damages, but was only required to use reasonable care not to increase damages.

Appeal from District Court, Harris County; Roy F. Campbell, Judge.

Suit by the Settegast Realty Company against the Foley Bros. Dry Goods Company, wherein J. J. Settegast and wife were made defendants to a cross-action by the Dry Goods Company. Judgment for plaintiff, and for the Dry Goods Company against Settegast and wife on the cross-action, and the latter appeal. Affirmed in part, and reversed and rendered in part.

Henry J. Dannenbaum and W. J. Howard, both of Houston, for appellants.

Sam Streetman and Maurice Epstein, both of Houston, for appellee.

PLEASANTS, C. J. The judgment here appealed from was rendered in favor of appellee upon a cross-action for damages for breach of the covenants of a lease executed by appellants to appellee.

The original suit, in which the cross-action was set up, was brought by the Settegast Realty Company against appellee and appellants upon a claim of easement in a strip of land 4 feet wide and extending for a distance of 139 feet along the eastern line of the property leased by appellants to appellee. Upon a hearing on the application of the realty company for a temporary injunction, such relief was granted, and upon appeal to this court the judgment of the trial court was affirmed. 242 S. W. 485. The final trial in the court below resulted in a judgment in favor of the realty company, perpetuating the injunction in their favor against the use by appellee and appellants of the strip of land before mentioned for the purpose of erecting new (or additional) structures thereon, and in favor of appellee against appellants for the sum of $27,762.61, found by the jury to be the damages caused appellee by appellants' breach of the covenants of their lease. There is no appeal from the judgment in favor of the realty company.

Appellee's petition in its cross-action against appellants sets out the substance of the lease executed by J. J. Settegast and his deceased wife, the mother of the other appellants, on December 28, 1920, under which appellee acquired a leasehold interest for 99 years in lots 11 and 12 in block 45 in the city of Houston. These lots are described in the lease as a rectangle 50 or more feet by 250 feet or more, extending through the center of the block from Preston street on the north to Prairie street on the south, "and including all of the land covered by the buildings now on said lots, a map or blueprint of which

---

land is hereto attached and referred to for greater particularity."

Other pertinent provisions of the lease contract are as follows:

"(3) The lessors warrant that they have good title to the leased premises. * * * Lessors covenant with said lessee and warrant that it shall peaceably possess and enjoy said premises and all of the rights and appurtenances thereto in anywise belonging or appertaining during the term of this lease on the terms and conditions herein expressed, without the lawful interruption or ejection of any persons whomsoever."

"(5) It is now agreed for the purposes of this lease that the value of said premises at the beginning of the term of this lease is $300,000, of which the sum of $60,000 is the agreed value of the improvements, and $240,000 is the agreed value of the land, and that the cash rent for the first ten years of this lease shall be paid on that basis, and shall be for those 10 years 6 per cent. per annum on said $300,000."

"(10) The lessee has the right to make all such alterations and changes as it may desire in the improvements now on said land, and to repair, remodel, and reconstruct said improvements, and to erect such new improvements as it may desire."

Paragraph 3 also provides:

"If the lessee herein shall, at any time, after the beginning of this lease, etc., desire and be ready and prepared to construct a new building, the lessors hereby obligate and bind themselves that they will loan to the lessee herein the sum of $100,000," etc.

In its pleadings, appellee alleges, in addition to the contract, that:

"Prior to the execution of said lease contract said defendant J. J. Settegast had full knowledge of the purposes to which this defendant Foley Bros. Dry Goods Company, intended to put said premises, and the purposes and plans of said Foley Bros. Dry Goods Company with reference to the remodeling of said improvements, then on said land, and said contract was executed with the knowledge and understanding on the part of said defendant Settegast that this defendant Foley Bros. Dry Goods Company, was contracting with him and his wife for the purposes and consideration of having the free and unrestricted use and enjoyment of all the lands in said contract, as well as all the improvements then on said land, and the right to remodel said improvements or erect new improvements on all of said land."

Also:

"That at the time of the execution of said lease contract this defendant had no notice or knowledge of any incumbrances or claims against said leasehold interest whatsoever that would in any way diminish the leasehold interest of this defendant, or would in any way interfere or limit the free and unrestricted use and enjoyment of all of said premises, and the full and unrestricted use of the buildings thereon for remodeling or alteration purposes. This defendant had no notice whatsoever, prior to or at the time of the execution of said contract, and

was relying wholly on the representations and warranties of said defendant J. J. Settegast."

Appellee also alleges:

"That prior to and at the time of the execution of said lease contract dated December 28, 1920, the said defendant J. J. Settegast, acting for himself and his wife, Mrs. K. M. R. Settegast, was advised and informed by defendant Foley Bros. Dry Goods Company that the said defendant Foley Bros. Dry Goods Company desired and intended to use all of said space designated in said lease contract for the purposes of its business and for the extension and growth of said business, and, further, the said defendant Settegast was advised and informed by defendant Foley Bros. Dry Goods Company that it desired and intended to construct a modern building on all of said premises, or at least to remodel the buildings then on said premises, and to increase the height of same to a minimum uniform height of at least three stories for the conduct of its business, and that it desired and intended to use all of said space for said purpose; that said contract was entered into for the express purpose and distinct understanding, and in consideration of enabling Foley Bros. Dry Goods Company to erect on said premises a building and improvements suitable for its business, and the extension and growth thereof, all of which was well known to said defendant Settegast prior to and at the time of the execution of said lease contract; that said defendant Settegast, nevertheless, with full knowledge of said facts and the purposes for which said space was to be applied, represented to defendant Foley Bros. Dry Goods Company that it could do all of these things, and that all of said space would be available for the purpose of its business and the extension and growth thereof as aforesaid, and the erection of new buildings or the remodeling of the buildings then on said premises, without hindrance or interference from any person or persons whomsoever; that defendant, in reliance upon said representations, was induced to enter into said contract of December 28, 1920, upon the terms and conditions contained therein, and thereafter proceeded to remodel said buildings at the first opportunity, but by reason of the injunction issued therein, and the claims of the plaintiff, Settegast Realty Company, it has been prevented from erecting or remodeling said buildings as contemplated at the time of the execution of said contract, or to use said premises in the manner represented and promised by said defendant Settegast, and in addition thereto has been deprived of the use and evicted from a space measuring 139 feet by 4 feet; that said representations made by said defendant Settegast were false and fraudulent, and as a proximate result of said false and fraudulent representations made by said defendant Settegast, the said Foley Bros. Dry Goods Company, in reliance upon said representations, has been damaged in the manner and to the extent hereinafter set out; that theretofore, to wit, on or about the 1st day of March, 1922, this defendant lawfully, and also with the permission, consent, and authority of the defendants J. J. Settegast and K. M. R. Settegast commenced to make certain improvements on the premises leased to it, and particularly to the east wall of its buildings, said east wall being situated on the east line of said premises, and being the dividing

line between the property leased to this defendant and the property owned by the plaintiff herein; that on or about the 6th day of March, 1922, a certain injunction was issued out of this court, on the application of plaintiff herein, whereby this defendant was restrained and enjoined from continuing to make any alterations or improvements on said east wall of its building, and restrained and enjoined from making any improvements on said east line of its premises, and was restrained and enjoined from making any improvements on the leased premises nearer than 4 feet to the west of said east line for a distance of 139 feet, and restrained from erecting any new buildings on said space or increasing the height of the walls of the buildings on said premises, as is more particularly shown by the injunction, and judgment issued herein against this defendant, as well as against the defendants J. J. Settegast and K. M. R. Settegast, who were parties thereto."

In answer to appellee's petition, appellants first pleaded the judgment in favor of the plaintiff, realty company, restraining appellee and appellants from placing any new or additional structures of any kind upon the strip of land before mentioned, and averred:

"That there has been a judicial determination in favor of plaintiff on the facts alleged by plaintiff, which is final and binding on all the parties to this suit; that the defendants are not cognizant of any additional facts which entitle the defendant Foley Bros. Dry Goods Company or these defendants to set aside the injunction heretofore granted plaintiff against said Foley Bros. Dry Goods Company."

They further answered by general demurrer and general denial.

The following items of damages were claimed by appellee in its petition as the result of appellants' breach of the covenants of the lease: $20,000, the alleged cost to appellee in expenses, labor, and material necessary in removing the east wall of the building and rebuilding said wall on a line 4 feet west of the east line of the property; $50,000, the alleged depreciation in the value of the leased property for the uses and purposes desired by appellee and contemplated by the parties in the execution of the lease caused by the loss to appellee of the use of the 4 feet of land along the east line of the property; $5,000 damage to appellee's business caused by delay in completing the improvements on the property; $8,000, the proportionate amount of the consideration paid appellants for the strip of land, the use of which appellee is deprived of by the injunction; $2,500 taxes which appellee will be required to pay under its lease contract upon said strip of land; and $750, cost of brick fence or wall which, under the easement agreement between the plaintiff, realty company, and appellants, appellee was required to construct along the 139 feet of the east line of the property from which the old wall of the building was removed.

The judgment recites the following items found by the jury and the court, which make the total amount of the judgment:

| | |
|---|---:|
| Special issue No. 3, tearing down old walls | $ 381 00 |
| Special issue No. 4, underpinning old walls | 5,236 11 |
| Special issue No. 5, labor and material in building new wall | 6,000 00 |
| Special issue No. 6, hauling away brickbats and mortar | 93 75 |
| Shoring under joists and roof to support floors | 250 00 |
| Carpenters relaying floors near walls | 180 00 |
| Back filling with dirt between walls | 132 00 |
| Supervision, timekeeper, watchman, foreman, and rent of tools | 2,702 15 |
| Workmen's compensation | 365 60 |
| Architects' fee | 1,090 00 |
| Back fence, amount fixed by agreement of parties | 250 00 |
| Difference in value of lease for 10 years | 6,082 00 |
| Special issue No. 9, delaying completion of improvements | 5,000 00 |
| Total | $27,762 61 |

The breach of the covenants of the lease, if not admitted by appellants' answer, was established by the undisputed evidence, and the uncontradicted evidence also sustains the allegations of appellee's petition as to the knowledge of appellants of the purposes for which the property was leased, and the intention of appellee to remodel and enlarge the buildings and to use for this purpose all of the ground covered by the lease, and of appellee's ignorance, at the time it executed the lease of the easement held by the realty company.

[1] Appellants first complain of the submission to the jury of the issue of the decrease in value of the lease caused by the easement held by the realty company, on the grounds that there was neither pleading nor evidence raising such issue. This complaint is without merit. The petition contains the following allegations:

"That, it being deprived of said strip of land by the issuance of injunction herein, the value of said leasehold to this defendant for the conduct of its business has been diminished and interfered with and this defendant has in fact been deprived of and evicted from, not only the ground space measuring 4x139 feet, but also, as hereinabove alleged, the same amount of space on its second and third floors, so that in all this defendant has been ejected from and deprived of the use of 1,668 square feet of space, having an actual merchandise selling value to it in the minimum sum of $5,000 each year, and this defendant has accordingly been damaged in the minimum sum of $50,000 for a period of 10 years representing the minimum term of said lease."

And, again, the appellee alleges:

"The proportionate rent which this defendant is obligated to pay under its lease contract for said space of 4x139 feet is over $800 per year, and though this defendant has been deprived of the use and enjoyment of said space, it has nevertheless, under its contract, been compelled to pay said rent to said defendants J. J. Settegast and K. M. R. Settegast, and under the terms of its lease contract is still obligated to continue to pay the same for a

minimum period of 10 years to its further damage in the sum of $8,000."

[2] There is no exception to the petition other than a general demurrer, and these allegations are clearly sufficient as against a general demurrer to entitle appellee to recover any loss sustained by it resulting from decrease in the value of the lease caused by the deprivation of the use by appellee of the strip of land covered by the easement held by the realty company. It is true that the petition does not allege any decrease in the market value of the lease resulting from the easement, but it is not a general requisite of good pleading that a petition allege a measure of damages. When facts are alleged showing that injury has been sustained for which plaintiff is legally entitled to compensation, the petition is sufficient, and, if there is evidence to sustain such allegation, the court should instruct the jury as to the proper rule for measuring plaintiff's damages. Ara v. Rutland (Tex. Civ. App.) 172 S. W. 993; Weller v. Missouri Lbr. & Mining Co., 176 Mo. App. 243, 161 S. W. 853; Denver & R. G. Railway Co. v. Roller (C. C. A.) 100 F. 738, 49 L. R. A. 77.

[3, 4] The trial court submitted to the jury two issues of damages sustained by appellee in the diminished value of the leasehold caused by the burden of the easement. The jury were first asked to find the decrease, if any, in the market value of the property, and were also asked to find the decrease in the value of the property for the conduct of appellee's business caused by the easement. In response to these questions, the jury found that the decrease in the market value of the leasehold for the 10 years (that term being fixed by the court because the lease contract gave appellee the option of surrendering the lease at the expiration of 10 years) was $6,082. They also found that the decrease in the value of the leasehold for the purposes for which appellee acquired it was $608.20 per year, which makes such decrease for the 10-year term $6,082. There was conflict in the evidence on both of these issues, but there was ample evidence to sustain each of the findings of the jury. Only one of these findings of damages was included in the judgment of the court, and the pleadings and evidence being sufficient to support the amount of damages for decrease in the value of the lease awarded by the judgment, appellants were not injured by the issue having been submitted under both rules for the measure of damages. Appellants' contention that appellee's right to damages is restricted to the decrease in the market value of the leasehold caused by the easement cannot be sustained.

The case-made by the pleadings and evidence call for the application of a rule of damage which will compensate appellee for the loss sustained by it as a result of appellants' breach of their contract of lease. Under the pleadings and evidence all of the damages claimed and recovered by appellee were the reasonable and probable result of the breach by appellants of their lease contract and must be presumed to have been in the contemplation of the parties when the lease was executed as a reasonable and probable result of its breach by appellants. There is no reason for not applying this general rule for the measure of damages to a breach of covenants of warranty and of quiet possession and enjoyment of the leased premises, when the pleadings and evidence show appellants knew of the purposes and use to which the lessee would apply the property and that appellee executed the lease in reliance upon these covenants. The rule announced in the old English case of Hadley v. Boxendale, 9 Exch. 341, has been consistently followed by our courts in all suits for damages for breach of contract regardless of the subject of the contract. Jones v. George, 61 Tex. 345, 48 Am. Rep. 280.

[5] It has been expressly held that the measure of damages for breach of a contract of lease by the lessor is such damages as naturally and proximately result from the breach. Morriss v. Hesse (Tex. Com. App.) 231 S. W. 317; Cauble v. Hanson (Tex. Civ. App.) 224 S. W. 922; Walter Box Co. v. Blackburn (Tex. Civ. App.) 157 S. W. 220.

Upon the issue of loss to appellee's business caused by its deprivation of the use of the easement strip, Adolph Meyer, a witness for appellee, testified:

"In my judgment, assuming that a business of that character had a certain amount of floor space in which to do business, and then a space measuring 4 feet by approximately 139 feet was cut off from the selling area, that would diminish the amount of business they could do. I would consider it a valuable space by virtue of the amount of space that it is. In my opinion a space for selling purposes immediately in front of the elevators of the store, that would be valuable. With reference to whether I would consider 4 feet by 139 feet more valuable for light and air for the purpose of my business or more valuable for selling space, I would regard it as more valuable for selling space."

George S. Cohen, president of the appellee company, testified:

"As a result of this loss of space they were all congested. It would add to the convenience of my business; it would add to the convenience and ability to sell more goods in those aisles if we had 2 more feet placed in the aisles. People coming in our Main street entrance circulate all round here, and naturally if this wall went back 4 feet, that many square feet that is required to comply with this easement would be allowed for space in this store. It would be allowed here particularly where it is needed most, and for that reason we lose a certain amount of business, * * * because our elevators are located directly behind those entrances * * * and here to the heart of the store, and this is where the space has been missed most."

This witness also testified in effect that appellee has been conducting its business at this place for about 7 years. He gave facts showing the character and volume of the business for each year and the profits thereon, and, based on these facts, estimated the value of the business of the 4-foot easement space for each year at an amount in excess of $608.20, the amount found by the jury.

W. C. Munn, a witness for appellants and an experienced dry goods merchant, testified on cross-examination:

"With reference to me being in the mercantile business quite a while, and if a business is crowded for room, and needs all the room it has, the business of the kind conducted by Foley Bros. Dry Goods Company, would it or not be a loss to that business to deprive them of any part of that selling space on the floor, my answer is, 'It would if not counteracted by some other advantage.' A man that had a store would be better able to tell. Mr. Cohen is regarded as a competent man. I believe him so, * * * I so regard him as having a fine judgment about these matters. The amount of business that I do in the store and the amount of profit I make conducting my business depends to a large extent on the amount of my floor space. If I had a large selling space occupied by my business, and I cut that floor space, I reduce the opportunity to do that much business. I only reduce it in proportion. You can do more business in 10 feet than you can in 5 feet. Taking into consideration the doing of business, you can do more business in a space of 4x139 feet than you can do without it, assuming the selling space is occupied."

And further:

"If I had that business covering a period of 7 years, showing the amount of business occupied each year, showing the character of business, showing that the entire floor space was used to its utmost capacity and the number of dollars of goods sold here for 7 years from each square foot of floor space, and. showing the percentage of profits. I could come more nearly to some idea of the value of that floor space. With all these things I could form a pretty good idea of the value of the additional space."

[6, 7] We think all this evidence was admissible upon the issue of the value to appellee's business of the space lost to it by the easement of the realty company, and it is sufficient to sustain the findings of the jury on that issue. It is now well settled that future profits of a business which can be shown with reasonable certainty are not too remote and speculative to form the basis of a judgment for damages.

[8] We agree with appellants in their sixth proposition, in so far as it relates to the $5,-236.11 damages recovered by appellee as expense of underpinning the old wall. The evidence negatives any bad faith on the part of appellants in their assurance to appellee that, notwithstanding the claim of the realty company, appellee had the right to erect the wall of the enlarged building upon the east wall of the old building. Mr. Cohen, appellee's president, who made the contract with appellant J. J. Settegast, expressly exonerates Mr. Settegast from any fraud or deception in the transaction. The evidence further shows that appellee, before it incurred the expense of underpinning the old wall, was fully informed of the easement agreement with the realty company, and that it consulted its attorney and was advised that the easement agreement did not prevent it from constructing the new wall upon the old one.

In these circumstances, appellants should not be held liable for the costs incurred by appellee in underpinning the old wall. Appellee did not incur this expense in reliance upon any representations of appellants, nor under any guaranty of appellants to reimburse it for such expense in event the easement of the realty company should be found to prohibit the use of the old wall for the new building, but with full knowledge of all the facts, it agreed with appellants that the easement did not prevent its use of the old wall and proceeded to do the work on the old wall for which it now seeks compensation from appellants. We do not think it is entitled, under any rule of law or equity, to recover from appellants this item of damage.

[9] We cannot agree with appellants in their further contention that appellee was not entitled to recover the full amount of $6,000 found by the jury to be the cost of constructing a new wall in lieu of the old wall it was enjoined from building higher, nor the value of all the space lost as the new wall was constructed, because the evidence shows that without violation of the injunction appellee could have placed the new wall increasing the height of the building as contemplated in its building plans upon steel beams extending up from the ground or basement of the building and offsetting at the top of this old wall so as to cover the space between it and the new wall, and that by meeting the situation in this way appellee would not have lost the space on the first floor of the building and the cost of such construction would have been considerably less than the expense of taking out the wall and building the new one.

[10] Conceding that the facts stated in this contention are shown by the evidence, we do not think appellee was required to so change the form of its building. Appellee was in no way responsible for the situation, and it was only required to use reasonable care not to increase the damages caused by appellants' breach of contract, and the evidence does not authorize a finding that the failure of appellee to utilize the old wall as contended by appellants was unreasonable. No such suggestion was made by appellants at the time, and there is no pleading charging appellee with negligence in this respect. We have fully considered all of the assignments and propositions presented in appellants' brief and none

of them, in our opinion, can be sustained, except the sixth proposition before discussed.

It follows from this conclusion that the judgment of the trial court should be affirmed, except for the item of $5,236.11 before set out, as to which the judgment will be reversed and here rendered for appellants.

Affirmed in part; reversed and rendered in part.

### On Motion for Rehearing.

In its motion for rehearing appellee makes the following complaint:

"This honorable court in its opinion sustaining said sixth proposition of appellants says:
" 'The evidence negatives any bad faith on the part of appellants in their assurance to appellee that, notwithstanding the claim of the realty company, appellee had the right to erect the wall of the enlarged building upon the east wall of the old building. Mr. Cohen, appellee's president, who made the contract with appellant J. J. Settegast, expressly exonerates Mr. Settegast from any fraud or deception in the transaction. The evidence further shows that appellee, before it incurred the expense of underpinning the old wall. was fully informed of the easement agreement with the realty company, and that it consulted its attorney and was advised that the easement agreement did not prevent it from constructing the new wall upon the old one. In these circumstances, appellants should not be held liable for the costs incurred by appellee in underpinning the old wall. Appellee did not incur this expense in reliance upon any representations of appellants, nor under any guaranty of appellants to reimburse it for such expense in the event the easement of the realty company should be found to prohibit the use of the old wall for the new building, but, with full knowledge of all the facts. it agreed with appellants that the easement did not prevent its use of the old wall, and proceeded to do the work on the old wall, for which it now seeks compensation from appellants. We do not think it is entitled under any rule of law or equity to recover from appellants this item of damage.'

"II. We respectfully submit that in holding the above view this court committed error because:

"(1) There is no evidence in the record 'that appellee, before it incurred the expense of underpinning the old wall was fully informed of the easement agreement with the realty company, and that it consulted its attorney and was advised that the easement agreement did not prevent it from constructing the new wall upon the old wall,' * * * and that 'appellee did not incur this expense in reliance upon any representation of appellants, nor under any guaranty of appellants to reimburse it for its expenses in the event the easement of the realty company should be found to prohibit the use of the old wall for the new building, but, with full knowledge of all the facts, it agreed with appellants that the easement did not prevent its use of the old wall.' "

Mr. Cohen, appellee's president, testified:

"I did not hear about the easement agreement until the fall of 1921. That was when my architect said something about some measurements. That was before I tore down any of the building; before I started to work on the wall. I was advised with reference to the easement and the building that I was erecting or contemplating erecting. I had legal advice. My advice was to go ahead with my building. I was advised by my legal advisors with reference to my legal rights as against the Settegast Realty Company to go ahead with that building; to take the advice of Mr. J. J. Settegast and go ahead with his assurance that he would back us up. I got these assurances from Mr. J. J. Settegast and Mr. Epstein, appellee's attorney. * * * I got this assurance daily for 30 days. For a month Mr. Settegast told me to ignore them more or less."

This testimony, which is undisputed, fully sustained the findings above complained of by appellee. We adhere to the conclusions expressed in our original opinion and refuse the motion for rehearing.