**Hilda C. LUETTICH, Appellant,**

v.

**Harry L. PUTNUM and Thelma Putnum, Appellees.**

**No. 5113.**

Court of Civil Appeals of Texas.
El Paso.

Dec. 28, 1956.

Rehearing Denied Feb. 8, 1956.

728

Long & Alfman, Fryer, Milstead & Luscombe, El Paso, for appellant.

Ellis O. Mayfield, William E. Ward, El Paso, for appellees.

HAMILTON, Chief Justice.

This was a suit brought by Harry L. Putnum and wife, Thelma, against Hilda C. Luettich, a widow, and her two daughters, with their husbands joined pro forma, alleging that plaintiff had a lease for ten years on property owned by the defendants; that they were unlawfully evicted therefrom, seeking damages for such unlawful eviction. Verdict and judgment were for the plaintiffs against Hilda C. Luettich only. Defendants' motion for new trial and plaintiffs' motion for new trial with regard to certain elements of damage which were disallowed by the trial court, were both timely filed and were both overruled, at which time both parties gave notice of appeal. No appeal was taken by plaintiffs from the verdict except as shown above.

Defendant Luettich below will be designated as appellant here, and the plaintiffs below will be designated as appellees.

It appears from the record that some time in April 1953 appellees approached appellant requesting that she build a building for them suitable for the operation of a cafe and drive-in on certain land located near Tigua, in El Paso County, Texas. Negotiations were entered into in reference to a ten-year lease to be taken by appellees, however no agreement for a lease was reached at that time, nor was it claimed that any agreement was reached prior to July 9th of that year. However, the appellant did proceed with the construction of a building on said land, and appellee began negotiating for equipment to be placed in the building, and finally made an agreement with Harry L. Hussman, Jr., Inc., to sell them and install the necessary equipment for the proposed business. All this was done without any agreement between appellant and appellees as to a lease. On July 9th appellees had a conference with the appellant with reference to the lease, and at the conclusion of said conference appellee Harry L. Putnum delivered his check in the amount of $400 to the appellant. Said check was made payable to Mrs. H. C. Luettich, appellant herein, and there was written on said check the following:

"First and last month's rent on ten-year lease on property 7820 North Loop Drive, starting at possession by me."

Appellee Harry L. Putnum testified he discussed this writing on the check with appellant and she agreed to it. On July 10th appellees started moving in the equipment purchased from Hussman, and on July 11th appellant returned said check, enclosed with a letter as follows:

"Harry, This is surely going to be a big mess if things keep getting out of hand. I am returning your check because of Ellis Mayfield and his talk of suit. I refuse to go along with you until you get rid of this Mayfield person.

Mrs. Luettich.

Inclosed find check."

Said letter and returned check was received by appellees on July 11th. Another conference was had with appellees and appellant on July 11, in which appellees contended that the previous oral agreement of July 9th was orally confirmed. Appellees then finished moving in their equipment and made certain improvements, such as putting up an automobile awning and an electric Neon sign, certain electrical wiring necessary for their equipment, paid a $45 fee to the water company for the water connection and meter, and made other improvements necessary for the operation of the business. On July 10th, when appellees started moving in, the building was not completed by the contractor. It appears that it was not contemplated that the building could be completed until the equipment was put in place. The contractor did not complete the building until August 2, at which time the keys to the building were turned over to appellees. Appellees opened for business on August 3rd. It appears that on August 11th appellee Harry Putnum again mailed a check for the amount of

$400 payable to Mrs. H. C. Luettich (appellant) on which check was written:

"For first and 120th months rent on Hi Mac".

On August 12th appellant returned said check with the following:

"Mr. Putnum, Again I return to you, your check for $400.00 as I did on July 10th. I have no such agreement with you and will not accept a check for a lease.

HCL".

Appellees continued each month mailing check for the rent to Mrs. Luettich and each time they were returned until the check dated November 28, 1953 for $1,200, said check being mailed by H. L. Putnum, and had written on it:

"For first, second, third, 4th and 5th and 120th months' rent as per lease agreed upon."

Said check was presented for payment, and was paid on November 28th by the Southwestern National Bank. At the time said check was presented for payment the figures "120th" had been erased and replaced with the following: "and 6th". Prior to the cashing of this check by Mrs. Luettich she had on October 31st written appellees a letter demanding possession of the property by December 10th. It was admitted on the trial that Mrs. Barbara Collins and Mrs. Jacquelyn McPherson, daughters of appellant, owned an undivided half interest in the property in question. On August 12th they were advised by attorneys for Mrs. Barbara Collins and Mrs. Jacquelyn McPherson that they would rent the building to the appellees on a month to month basis, and unless appellees could pay the rent on that basis they would proceed to secure possession of the premises. On September 18th said attorneys sent to appellees a copy of a lease providing for a term of ten years at a rental of $200 a month for the first year and $250 a month for the next four years, and $300 a month thereafter. In the letter of transmittal it was stated by said attorneys, acting for appellant and her two daughters, that that was the only lease that they would execute on the premises. On December 5, 1953, appellees addressed a letter to Mrs. Jacquelyn Luettich McPherson, one of the daughters of appellant, stating in effect that since she would not agree to the lease made by her mother to appellee, he was surrendering to her and her co-owners possession of the premises as of the date of the letter.

The jury made certain findings with reference to the facts. The pertinent findings were that appellant and appellees orally agreed with each other that appellant would lease premises to plaintiffs for at least ten years at $200 per month; that appellees tendered check dated July 9th, 1953, for $400, in payment for rent of such premises in accordance with said oral agreement; that appellant accepted said check as rent under such oral lease agreement; that the $45 paid by plaintiff for installation of the water meter on the premises was paid on agreement with appellant that same would be credited as rent paid under said lease agreement; that the appellees began moving in their equipment on or after July 9, 1953, in reliance upon said agreement, and caused to be made valuable permanent improvements to the realty in reliance upon said agreement; that the rent under said agreement began August 3, 1953; that appellees did not voluntarily abandon the premises in question on or about December 1, 1953; that the reasonable rental value of said premises on or about December 1, 1953 was $250 per month. There are other findings in answer to special issues, that exemplary damages to the amount of $500 should be assessed against the appellant. No other issues of damage were submitted to the jury, and the court found damages for the appellees in the amount of $5,800 for the loss of their rental bargain, $400 for prepaid rent retained by appellant, and various other items of damages totaling $1,247.14, but denied appellees any recovery for exemplary damages.

The appellant raises 21 points of error. However, we think that the principal questions involved in this law suit raised by appellant's points are: First: Was there sufficient evidence to support

the jury finding that appellees and appellant entered into an oral agreement for a lease for ten years at $200 per month? Second: Were there sufficient facts connected with such agreement to take the oral agreement out from under the statute of frauds? Third: Was there a constructive eviction of appellees? and Fourth: Were the damages assessed by the court supported by the evidence? We overrule appellant's points excepting to the finding that an oral agreement was entered into for a lease for ten years at $200 a month, and her excepting to the introduction of various testimony in proving such oral agreement. The appellees both testified positively that such an agreement was entered into. The unsigned written lease which they testified was read and discussed with appellant on July 11th was introduced in evidence, appellees testified that appellant agreed that the terms provided in such unsigned written lease expressed their agreement. This was after appellant had returned the check of July 9th. Appellant makes much of the fact that at various times during the trial appellees admitted that they did not have a lease during the time they were occupying the premises. A careful reading of all the testimony leaves no doubt, that on each occasion such a statement was made, reference was to a signed written lease, and not to the oral agreement to which they had testified. We think the finding of the jury as to the oral agreement was sustained by the evidence.

The second question to be determined is whether or not there was sufficient evidence to take the oral agreement out of the Statute of Frauds. Appellant contends that even if there was an oral agreement, the following must appear in addition:

"No. 1. There must be payment of rent as agreed and the rent must be accepted under the lease by the lessor;

2. Possession must be had by the lessee under the lease.

3. Permanent improvements must be made by the lessee relying on the lease."

Appellant recites in support of this proposition the following cases: Walker Avenue Realty Co., Inc., v. Alaskan Fur Co., Tex. Civ.App., 131 S.W.2d 196, 198, error refused; American Nat. Ins. Co. v. Warnock, 131 Tex. 457, 114 S.W.2d 1161; Burgin v. Godwin, Tex.Civ.App., 167 S.W.2d 614; Chevalier v. Lane's, Inc., 147 Tex. 106, 213 S.W.2d 530, 6 A.L.R.2d 1045; Taber v. Pettus Oil & Refining Co., 139 Tex. 395, 162 S.W.2d 959, 141 A.L.R. 808; Francis v. Thomas, Tex.Com.App., 129 Tex. 579, 106 S.W.2d 257. We agree with appellant's statement of the law, but we are also of the opinion that as evidenced by the finding of the jury, that appellees' case comes within the law as stated. From the evidence it appears that appellees entered into possession of the premises under the agreement, made improvements, valuable improvements of a permanent nature, on the premises, relying on the oral agreement, and tendered payment of the rent under the oral agreement, which was accepted by appellant under the oral agreement. They opened for business on August 3, 1953, and started operating. Not until August 11th, after all the improvements had been made by appellees, did appellant advise the appellees that she did not consider that there was an agreement, and that she had no such agreement with the appellees. The letter returning the first check tendered stated that it was returned because of appellees' attorney, Ellis Mayfield, and that she refused to go along with appellees until they got rid of the "Mayfield person." It did not advise the appellees that she was contending that she had not made any agreement with them, but that it was purely a personal matter between her and appellees' attorney. The jury found that on July 9th, when the first check for rent was tendered to appellant that she accepted it as payment for the rent. The evidence submitted on this question was sufficient to sustain the jury's finding. There was further testimony that appellant agreed with appellee that he should pay $45 for a meter deposit and she would give him credit on his rent for the amount. This payment was made on the 15th of July, and the jury's finding to this effect is sustained by such testimony. It is

undisputed that certain permanent improvements were placed on the premises by appellees, and the jury's finding that they were placed thereon in reliance upon the oral agreement is supported by the evidence. We therefore hold that the Statute of Frauds does not apply in this case, and overrule all of appellant's points directed at the court's judgment on this question.

The third question which is raised by appellant is that the appellees voluntarily abandoned the premises in question, and were not evicted constructively or otherwise. It is not contended by appellees herein that they were put out of possession of said premises by physical force, but the letter of December 5th which appellees sent to Mrs. McPherson, one of the daughters of appellant, stated he was surrendering the premises because of the paramount title asserted by the daughters, and their unwillingness to agree to the same lease terms as appellant had agreed. It is undisputed that a paramount title had been asserted against the appellees as tenant of appellant. It seems to be well established that eviction can now be taken to mean the establishment or assertion against the tenant of a title paramount to that of the landlord. 36 C.J. 255, Sec. 979; 52 C.J.S., Landlord and Tenant, § 445; Avery & Sons' Plow Co. v. Kennerly, Tex.Com. App., 12 S.W.2d 140; 27 Tex.Jur. 292; 172 A.L.R. 18. We therefore overruled all of appellant's points excepting to the finding that appellees were evicted.

There was no issue on damages submitted to the jury other than exemplary damages. Appellant makes no exception to the finding of the court of the $5,800 damages allowed the appellees for the loss of rental bargain, and for the amount of $400 allowed for prepaid rent. Appellant does object, however, to various small items of damage which the court found to be due appellees, such as expenditures made by appellees in order to make the premises suitable for the intended use of the premises by moving the automobile awning and redesigning the Neon sign for subsequent tenant. It is not contended such expenditures made by appellees were unreasonable or were not necessary. It is our opinion that under Art. 5236, R.C.S. which provides in part:

"Should the landlord, without default on the part of the tenant or lessee, fail to comply, in any respect with his part of the contract, he shall be responsible to said tenant or lessee for whatever damages may be sustained thereby * * *."

The court has a wide latitude in assessing damages and we do not believe it has abused its discretion in assessing such. In the case of Reavis v. Taylor, 162 S.W.2d 1030, it was held that an evicted tenant may recover all damages which are the result of natural and probable consequences of wrongful eviction, and also any special damages which were reasonably suffered at the time of eviction. Other cases in point are: McKibbin v. Pierce, Tex.Civ. App., 190 S.W. 1149; Cauble v. Hanson, Tex.Civ.App., 224 S.W. 922; Settegast v. Foley Bros. Dry Goods Co., Tex.Civ.App., 297 S.W. 676; Byers v. Moore, 110 Ark. 504, 163 S.W. 147.

We therefore overrule all of appellant's points raised as to the court's judgment in favor of appellees.

Appellees have filed cross-assignments of error complaining of the court's failure to render judgment on the jury's finding of $500 damages as exemplary damages. We overrule appellees' point directed at the court's action thereon, as we are of the opinion that the evidence in this case is not sufficient to sustain exemplary damages. We also overrule all of appellees' points directed at the court's failure to allow certain items of claimed damages.

The judgment of the trial court is in all matters affirmed.