### BELCHER et al. v. BULLION.
### No. 8754.

Court of Civil Appeals of Texas. Austin.

Oct. 19, 1938.

Rehearing Denied Nov. 9, 1938.

Kerr & Gayer, of San Angelo, for appellants.

Murphy & Leslie, of San Angelo, for appellee.

BAUGH, Justice.

Appeal is from a judgment in favor of appellee against appellants for $250 damages, awarded by a jury, for wrongful eviction of appellee from premises situated in San Angelo and owned by Mrs. Lillian Belcher.

The case arose as follows: On March 2, 1936, appellee Bullion, as tenant, was operating a barber shop in a building in San Angelo, Texas, owned by Mrs. Lillian Belcher. On that date she brought suit against him in trespass to try title, sequestered the property, had Bullion evicted, his fixtures removed from the premises, and later replevied the property. No citation was issued in the case, but on September 9, 1936, Bullion answered and filed a cross-action for actual and exemplary damages. The case was not tried until October, 1937. Upon a jury verdict, finding that Bullion had a rental contract on said premises for the period from December 15, 1935, to December 15, 1936, that the writ of sequestration was wrongfully and maliciously sued out, that his actual damages were $250, and that he was not entitled to exemplary damages, the trial court entered a judgment awarding appellants title and writ of possession to the premises, and appellee judgment for $250 as damages. Appeal is from the money judgment only.

The first contention made by appellants is that in his cross-action appellee pleaded a rental contract with Mrs. Lillian Belcher, and proved one made with Mrs. J. W. Belcher, a different person, thus constituting a fatal variance between the pleadings and proof.

The rule is elementary that to sustain a recovery the allegata and probata must correspond; and that plaintiff must recover, if at all, on the contract pleaded. In the instant case, however, even if it be assumed that the rental contract involved was made between D. I. Bullion and Mrs. J. W. Belcher, mother-in-law of Lillian Belcher, it was shown without controversy by appellants themselves that Mrs. J. W. Belcher was acting as the agent of Lillian Belcher, the owner of the property, with full and complete authority to bind her principal. No question was raised as to that, the case was tried throughout on that assumption, and no objection made either to the evidence or the submission of the special issues to the jury on the ground now here presented. That being true, and the agency and full authority of Mrs. J. W. Belcher to act for her principal, and to make a binding rental contract with appellee, even if it be conceded that the real principal was not disclosed to Bullion, the contract was clearly binding upon Lillian Belcher. Nowhere did Lillian Belcher deny the authority of Mrs. J. W. Belcher to act in the premises by pleading or otherwise; but on the contrary affirmatively showed her full authority to do so; and that whatever was done was done for her use and benefit and with her approval. Under such circumstances proof of a contract with the agent constituted no variance with the pleading of a contract with the principal. Baldwin v. Polti, 45 Tex.Civ.App. 638, 101 S.W. 543; Nimmo v. O'Keefe, Tex.Civ. App., 204 S.W. 883; Jackson v. Dickey, Tex.Com.App., 281 S.W. 1043; Griffin v. Berry, Tex.Civ.App., 6 S.W.2d 183; 2 Tex. Jur., § 113 p. 510.

Appellants' next contention is that under his proof appellee's damages were predicated upon anticipated profits, dependent upon the chances of trade, and consequently were too remote and speculative to warrant the judgment. Much has been written upon this question, but where a clear breach of contract is shown (in this case the jury found that it was both wilful and malicious) all that is required is that the amount of such damages be shown with reasonable certainty. In the instant case it was shown that a barber shop and beauty parlor had been operated in this property for approximately a year prior to the time appellee's fixtures were thrown out in the street at the instance of appellants and the building padlocked. The operators thereof, prior to the time appellee acquired

the business in December, 1935, testified to profits from said business of $40 to $45 per week. Appellee testified that during his operation of the shop the profits were from $100 to $150 per month. It was not a new business, but a going concern, when appellee acquired it. In addition to the income from his trade appellee was receiving $12 per month rent from a beauty parlor installed in the rear of the building. Manifestly this evidence furnished sufficient criteria from which the jury could reasonably compute the extent of appellee's damages. That he was entitled to recover for loss of future profits in the instant case is not an open question. Graham Hotel Co. v. Garrett, Tex.Civ.App., 33 S.W.2d 522; Bagby v. Hodge, Tex.Civ.App., 297 S.W. 882; American Const. Co. v. Davis, Tex. Civ.App., 141 S.W. 1019; 17 C.J. 785; 13 Tex.Jur. § 112, p. 212.

 The next question raised complains of the exclusion by the court of a certified copy of a divorce decree between appellee and his wife attached to which, and approved by the trial court in the divorce case, was a settlement agreement of their property rights. This divorce decree was granted on September 22, 1937. The agreement gave to appellee herein an automobile and to his divorced wife "title and possession to all household furniture, fixtures and effects * * *." It is the theory and contention of appellants that this decree vested in appellee's wife whatever cause of action he had against appellants herein; that it was admissible to show that fact; and that consequently, had it been admitted, the court should have denied appellee a recovery. Appellants filed no pleadings to that effect. Even if they had, however, or if the divorce decree and settlement had been admitted, the result would have been the same. Appellee's cause of action arose on March 4, 1936; he set it up by proper pleading on September 9, 1936; the divorce decree was entered on September 22, 1936. It is clear, therefore, that the cross-action was properly brought by appellee in his own right and name on September 9, 1936. We are of the opinion that the term "effects," as used in the property settlement, which did not become effective until September 22, 1936, was not intended to cover choses in action, but because of the context, "all household furniture, fixtures and effects," was intended to apply and include only "household effects." However that may be, and if treated as an assignment by the husband to his wife of whatever cause of action he may have had against appellants, the suit having already been properly filed in his name, it would merely amount to an assignment pendente lite; and as stated in Sanders v. Farrier, Tex.Civ.App., 271 S.W. 293, 297: "And it is the general rule that a voluntary conveyance or transfer made during the pendency of a suit does not affect the suit nor impair the right to recover, if at the time the suit is commenced such party could have sustained the suit." See, also, West Texas Utilities Co. v. Nunnally, Tex.Civ.App., 10 S.W.2d 391, 393; 1 Tex.Jur., § 56, p. 82. That being true, had the appellants filed a plea in abatement on the ground asserted, and the divorce decree been admitted in evidence, the appellee would still have been entitled to a judgment. We are not concerned with what rights, if any, his divorced wife may have had in such judgment under such circumstances.

 The remaining contentions made by appellants relate to arguments of appellee's counsel to the jury claimed to be improper. First, in commenting on the absence of Mrs. Lillian Belcher from the trial and her failure to testify. It was in evidence by appellants themselves that she should have attended had they deemed it necessary. It appears therefore to be legitimate argument based upon the evidence. But if error, it was manifestly harmless. The only transactions appellee had were with Mrs. J. W. Belcher, who acted as agent for Lillian Belcher, and consequently had Mrs. Lillian Belcher been present the only testimony she could have given would have related to the powers of such agent. Not only were there no pleadings denying the authority of such agent but appellants themselves established and relied upon such agency. Consequently neither her failure to appear, nor counsel's comment thereon, could have influenced the jury's verdict because they allowed no exemplary damages, and a very moderate amount of actual damages.

 The second argument complained of was that counsel referred in his argument "to wealth on one side and poverty on the other" in his remarks, "That plaintiff in this case gave a $10,000 bond and threw this man who couldn't put up a $10,000 bond out of the building without a hearing." This statement was but a part of counsel's argument based upon examination and testimony of one of appellants, manifestly on the issue of exemplary dam-

486

ages. Counsel had interrogated said witness as to why she had not resorted to forcible entry and detainer suit to get possession of said premises instead of suing in trespass to try title and sequestering the property under a large bond. The amount of the bond, and the testimony of appellee that he could not make such bond and retain possession of the premises, were in evidence without objection. Under these circumstances, and appellee's contention that appellants' actions were malicious and designed to deprive him of a remedy within his means, we are inclined to the view that the argument was justified. But if it be conceded that it was not, no complaint being made of the findings of the jury, nor that the evidence was not sufficient to sustain them, the only injury that such argument could have done would have been to prejudice the jury on the amount of the damages.

Since, however, they allowed no exemplary damages, and under all the facts and circumstances the actual damages found were little more than nominal, and much less than the evidence would have warranted; it is manifest that such argument, if error, was harmless. It follows, therefore, that the judgment of the trial court should be affirmed, and it is so ordered.

Affirmed.