Robert McKENZIE and Charles McKenzie, Appellants,

v.

A. C. CARTE, Appellee.

No. 46.

Court of Civil Appeals of Texas.

Corpus Christi.

Dec. 17, 1964.

Rehearing Denied Jan. 7, 1965.

Luther E. Jones, Jr., Corpus Christi, Werner A. Gohmert, Alice, for appellants.

Bob Spann, of McDonald & Spann, Michael C. Kendrick, Jr., Corpus Christi, for appellee.

NYE, Justice.

This is a suit for damages resulting from the landlord's unauthorized entry on leased premises. Appellee, A. C. Carte, leased from appellants, Charles McKenzie and Robert McKenzie, the second floor premises at 4428 Highway 9, Corpus Christi, Texas, where he and various sub-lessees operated a private club. The appellants, as lessors, evicted appellee and his sub-lessee B. M. Westover, an intervenor in the suit below, from the premises. Appellee brought suit seeking a temporary restraining order and temporary injunction to gain possession of the premises, and damages for the wrongful dispossession on the part of the appellants. Appellants answered and filed a cross-action seeking damages for alterations made by the appellee and Westover to the premises. Westover, as intervenor, filed a cross-action against appellee and appellants, seeking a declaration that he is the owner of the furniture and equipment located in the premises and for damages for the wrongful ejection of him by the appellants. The trial court awarded damages to appellee Carte, and a take-nothing judgment was entered against appellants McKenzie and intervenor Westover. Westover did not perfect his appeal.

In September, 1953, appellee approached appellants in regard to obtaining a lease of the premises owned by the appellants for the purpose of operating a private club. A lease agreement was entered into wherein the appellants granted the appellee a ten-year lease beginning January 1, 1954, and ending December 31, 1963, with a ten-year option thereafter. The rental for the primary term was $35,100.00, with the first month and the last three months' rental to be paid in advance; calling for $275.00

per month rental during the first year and $300.00 per month thereafter for the full term of the lease. The rental during the ten-year option period was to be $36,000.00, payable $300.00 per month. To exercise the option to extend the lease, appellee was to notify appellants in writing during the month of November, 1962, some thirteen months before the expiration of the primary term. Appellee operated the private club personally for several years and thereafter sub-leased the premises to various sub-tenants who paid appellee a bonus over and above the monthly rental due under the lease. The lease agreement provided in paragraph 6 that: "In the event Lessee (appellee) sub-leases or assigns said premises Lessee shall remain personally liable for payment of the rental consideration."

Appellee's operations from the beginning until he was locked out by the appellants were successful. In January, 1957, appellee sub-leased the premises to C. O. Scott for $900.00 a month, $300.00 of which was to be paid to appellants and $600.00 to be paid to him. Subsequently, appellee re-leased the premises to Scott for one year for the sum of $8,800.00, $3,600.00 of which was to be paid to the appellants at the rate of $300.00 a month, and $5,200.00 to be paid to him at the rate of $100.00 per week. Subsequently, appellee sub-leased the premises to Mr. J. B. Rathmell for a two-year period for a rental of $700.00 per month, $300.00 of which was to be paid to appellants, and $400.00 per month payable to him. On or about October 19, 1960, Rathmell made a deal with Westover to take over the premises, with Westover paying Rathmell $2,500.00 cash. Westover was to pay the appellants $300.00 per month and the appellee $400.00 per month. This deal was to be subject to the approval of the appellee. Rathmell and Westover contacted the appellee and he agreed to accept Westover on a trial basis. Westover paid the appellants $300.00 and the appellee $400.00, at which time the appellee gave Westover a receipt which stated: "Received of: B. M. Westover $400.00 (four Hundred Dollars) for one month rent Oct 19 to Nov 19th for Oil Patch rent—At which time a lease will be drawn and the first & last month will be deposited—$800.00." The appellants accepted the monthly rental from all of the sub-lessees.

On the 11th day of November, 1960, appellants changed the lock on the premises, refusing to let Westover in the premises. Appellee contacted the appellants in an attempt to ascertain the reason for the eviction. The appellants informed appellee that they did not like the way Westover was operating the club and therefore they were locking appellee, as well as Westover, out of the premises and they (the appellants) were re-taking the property.

Eleven days after the eviction the appellee filed this suit seeking immediate possession of the premises by way of a temporary restraining order, alleging that such eviction did in effect destroy his profitable business of operating a private club. Appellee further alleged that: he had made extensive improvements to the premises in the amount of $35,000.00; that the damages to his operations were in the amount of $80,000.00; by supplemental petition he alleged that he had sub-leased the premises for $700.00 per month, $300.00 of which was to be paid to the appellants and $400.00 per month was to be paid to him; and that by reason of the dispossession he had been deprived of this income for the unexpired term of the lease and for the ten-year option period which the appellants had destroyed by reason of the wrongful eviction. The record does not indicate the disposition of appellee's application for temporary restraining order and temporary injunction. The case was tried before the court without a jury in May, 1962, and judgment was entered in October, 1963, just prior to the expiration of the primary term of December 31, 1963.

The appellants asserted three theories of defense to their action in evicting the appellee from the premises. First, that the appellee did not have the right to sub-let

the premises to Westover or the other sub-lessees; second, nonpayment of the rent due under the lease; and third, that the appellee had permitted the operation of an illegal business and that he had permitted the premises to become a common nuisance because of such operations. The trial court filed thirty-two separate Findings of Fact and eleven Conclusions of Law in support of its judgment. The trial court found against the appellants to the effect that the appellee did have the right to sub-lease the premises and that the appellants had accepted such sub-lessees, including West-over. The court further found that the rents due under the lease had been paid and accepted up to the time of the eviction in November, 1960. The appellants do not attack these findings on appeal.

The controlling question on this appeal is the amount of damages awarded to the appellee. The appellants, as well as the appellee by cross points, contend that the trial court erred in awarding damages in the amount of $7500.00.

Appellants assign two points of error to this Court. In their first point, appellants complain that: "The adjudication in the trial court's final judgment adjudging that appellee recover $7,500 from appellants is not supported by the material trial court formal findings of fact or by any conclusive evidence."

It was undisputed in the record that the lease provided for a ten-year primary term with a ten-year option. The appellants evicted the appellee from the premises after he had been in possession seven years. The appellee testified, without objection or contradiction, that he had been making $7,800.00 a year profit from the operation of the club while he was the operator and that in all reasonable probability the place of business would make $7,800.00 a year for the three remaining years of the primary term, that is, from 1960 through 1963. The record further showed that the lease had a rental value of $700.00 per month while

the stipulated rent payable to the appellants was $300.00 a month, leaving a net to the appellee of $400.00 a month. This was the amount of profits that the appellee was making at the time of the eviction. One expert witness testified, without objection, that the lease had a net market value to the appellee, after being discounted for cash, for the balance of the term of three years and during the ten-year option period, of $48,000.00.

Upon the request of the appellants the trial court filed separate formal findings of fact. Included in these findings of fact are the following:

"24. Plaintiff, under the terms of the lease, had an option to extend the lease for a period of ten (10) years from the end of the primary term.

"25. Such option had to be exercised before the end of November, 1962, while such lease was in full force and effect.

"26. By closing the premises, Defendants damaged the Plaintiff by destroying a profitable business, i. e., that of furnishing and equipping a place for the members of the private club to meet.

"27. The Defendants, by locking Plaintiff and his sub-tenants out of the premises, destroyed the value of the option for the additional 10 years.

"28. The Plaintiff would, in reasonable probability, have exercised the option for an additional 10 years had the eviction not occurred.

"29. The Plaintiff would, in reasonable probability, have realized a profit during such option. After deducting rental payments, maintenance, replacement and other costs, the sum of Seventy five Hundred Dollars ($7500.00), if paid now in cash, would reasonably compensate the Plaintiff for such lost profits."

The Court concluded that:

"10. The loss or damages sustained by the Plaintiff as the result of being excluded from his leasehold are the profits he would in reasonable probability have received had the lease not been terminated by Defendants.

"11. That the damages sustained by Plaintiff were the natural and probable result of the Defendants' act in excluding Plaintiff from his leasehold."

■ We hold that the formal findings of fact found by the trial court support a judgment awarding appellee the sum of $7500.00 as compensation for the destruction of the value of the appellee's option to extend the lease for an additional ten years and that there was sufficient evidence to support such findings. Appellants' first point is overruled.

Appellants' second point states that:

"The trial court formal finding of fact that $7500 would reasonably compensate appellee for loss of profits during the option period does not establish and is not germane to any element of any ground of recovery asserted or established by appellee and hence affords no support for the adjudication in the trial court final judgment that appellee recover $7500 from appellants; accordingly, the trial court committed reversible error in relying on such finding as support for such adjudication and in including it in said judgment."

■■ Appellants contend in effect that the trial court's judgment was based solely on finding of fact number 29 and that this is not germane to any ground of recovery asserted by the appellee. Appellants argue that appellee sought an adjudication that the lease was in full force and effect and that appellee did not plead or seek any damages as part of that ground of recovery. This part of appellants' point number 2 is not well taken. The original petition was apparently filed while there was still some hope that appellee's business could be preserved and although it did contain a prayer for injunctive relief in hopes that the business could be preserved, it also prayed for damages caused by such illegal and unlawful dispossession from the premises. Appellee plead in his original petition: "That this overt, unlawful and dispossession by force on the part of lessors, with malice and with the willful intent to harm, damage and deprive plaintiff of his valuable leasehold estate and of the valuable improvements that he has placed upon such premises and further, with the intent to deprive him of the valuable option to renew and extend such lease for an additional period of ten (10) years, has resulted in damage and will result in irreparable damage to plaintiff." The petition and the supplemental petition contained other allegations of wrongful acts causing damages to the appellee. Appellee's supplemental petition alleged that: " * * * By reason of the unwarranted, unlawful dispossession by force on the part of the defendant, the plaintiff has been deprived of the income in excess of the monthly rental, to-wit, the sum of Four Hundred Dollars ($400.00) per month for the unexpired term of the lease and the period of the option to which he was entitled and in reasonable probability would have exercised, * * *." The entire record discloses that the case was tried upon the theory that the wrongful eviction by the appellants damaged the appellee during the period of time that the appellee had been excluded from the premises, (the remaining period of the primary term) and damages for the ten-year option period. There were no exceptions made by the appellants to the appellee's pleadings. We hold that there was sufficient notice set forth in the original and supplemental petitions, unobjected to by the appellants, to apprise the appellants of the cause of action asserted by the appellee. Even if the issues and the theories upon which the case has been tried are not raised by the pleadings but are tried by consent of the parties, they are treated

as if they had been raised in the pleadings and a failure to amend to conform to the evidence does not affect the result of the trial on such issues. Rule 67, Texas Rules of Civil Procedure; 46 Tex.Jur.2d 191, § 290; 46 Tex.Jur.2d 84, § 230, and the cases cited therein. In fact, under cross examination by intervenor's attorney, appellee was asked if he was not seeking damages for the remainder of the term of the lease and for the termination of the option, which he answered in the affirmative, without objection.

 Appellants argue as the second part of this point number 2, that the appellee was put to an election of remedies, in that he could either accept the repudiation of the lease and treat the lease as being at an end and sue for damages proximately resulting and that might result because of such repudiation, or he could elect not to accept the repudiation and treat the lease as being in existence and could seek to enforce it by suing for recovery of possession and for damages sustained by him on account of deprivation of the use of the premises. Appellants argue that the appellee is seeking inconsistent relief and that appellee has two or more remedies and by pleading one of such remedies he is estopped to assert and recover on any other right. This point is not well taken. The appellee was entitled to plead and prove inconsistent causes of action and alternative relief. Rule 47 and Rule 48, T.R.C.P.; 52 Tex.Jur.2d 671, § 121. The essential conditions in the election of remedies is the existence of two or more remedies, an inconsistency between such remedies, and the choice of one of them in the actual pursuit of one to the exclusion of others. 21 Tex.Jur.2d 199–200, § 5.

 The appellants contend, however, that since appellee sued originally for possession of the premises and the trial court in effect gave him possession, he is not entitled to damages for loss of profits during the option period. That portion of the judgment the appellants refer us to is where the trial court declares that the lease is to be in full force and effect; however, during the period of time from the eviction until the date possession is restored to the appellee, the rental due and to fall due under such lease agreement shall be abated. The judgment does not grant possession to the appellee. Even if it had, it would have been only for the remaining period of the primary term of two and one third months. Neither the appellee nor the trial court attempted to exercise the option to extend the lease beyond the primary term, nor have appellants asserted that this took place. It therefore holds that an award of $7500.00 in damages for loss of profits for destruction of the option by the appellants is not inconsistent in permitting the appellee to have possession for the remaining period of the primary term of the lease if the appellants are willing.

Appellants contend on this appeal for the first time that appellee elected to refuse to accept appellants' repudiation of the lease. The trial court did not make any findings of fact or conclusions of law to support this contention. The appellants did not object to the findings of fact filed nor did they request any additional findings or conclusions of law. The appellants did not urge the defense of election of remedies in the actual trial of the case, nor did they plead such defense. Betty v. Tuer, 292 S.W. 271 (Tex.Civ.App.1927); Holland Texas Hypotheek Bank v. Broocks, 266 S.W. 183 (Tex.Civ.App.1924, wr. ref.); Nelson v. Seidel, 328 S.W.2d 805 (Tex.Civ.App.1959, wr. ref. n. r. e.).

In 21 Tex.Jur.2d 210, § 11, Election of Remedies, it is said:

"The defense of election of remedies, if relied on to defeat recovery, must be specifically pleaded. Pleading is essential regardless of whether a defense is regarded as one of estoppel, election, or waiver. The defense of election must be presented in the trial court, and cannot be urged for the first time on appeal. And the party who sets up

the defense of election must show that his opponent actually had two valid, available, and inconsistent remedies, and that he undertook to pursue one."

██ The rule covering election of remedies is an application of the law of estoppel and it is used to prevent a double redress for a single wrong. Mosher Mfg. Co. v. Eastland W. F. & G. R. Co., 259 S.W. 253 (Tex.Civ.App.1924, wr. ref.); 18 Am.Jur. 131 § 4; Slay v. Burnett Trust, 143 Tex. 621, 187 S.W.2d 377 (1945). The trial court's language contained in its judgment concerning possession of the premises is at most precatory and wishful in nature. It does not allow double redress for the wrongful acts of evicting the appellee. The appellants' point number 2 is overruled.

The appellee, in his appeal from the judgment awarding $7500.00 in damages, contends in two cross points that the pleadings, evidence and findings of the court require the entry of a judgment in the amount of $22,700.00 instead of $7500.00. The judgment of the trial court stated that: "* ·· * the Court finds that the relief prayed for by the plaintiff (appellee) should be granted. * * *" The trial court then filed formal findings of fact and conclusions of law. Included in these findings of fact are the following:

"2. Plaintiff was in possession of the premises at all times after the lease was executed until Defendants changed the locks on the premises on or about November 11, 1960.

"11. Defendants knew at the time they leased the premises to Plaintiff, that such premises would be operated as a private club.

"12. The Defendants were acquainted with the operation of the club at all times material to this dispute.

"19. The Defendants knew, on or about October 17th, of the subletting by Plaintiff to Westover.

"20. On or about October 17th, 1960, the Defendants accepted Three Hundred Dollars ($300.00) rental from Plaintiff with knowledge of Westover's sub lease.

"21. The Defendants accepted Westover as a sub-tenant of Plaintiff.

"21(a). The Plaintiff was an operator for a private club and derived income from furnishing and equipping a place for the members to use and assemble.

"22. The leased premises had, for several years prior to the eviction produced at least Four Hundred Dollars ($400.00) per month profit to Plaintiff.

"23. In reasonable probability, Plaintiff would have continued to receive at least Four Hundred Dollars ($400.00) per month profit from the leased premises until the end of the primary term, i. e., December 31, 1963."

The trial court concluded that:

"9. The Defendants unlawfully terminated the lease dated September 30, 1953, when they excluded Plaintiff from his leasehold.

"10. The loss or damages sustained by the Plaintiff as the result of being excluded from his leasehold are the profits he would in reasonable probability have received had the lease not been terminated by Defendants.

"11. That the damages sustained by Plaintiff were the natural and probable result of the Defendants' act in excluding Plaintiff from his leasehold."

The appellee contends that he would have continued to receive $400.00 per month profit from the leased premises from November, 1960, (the date of the eviction by the appellants) through December 31, 1963, (the end of the primary term) or a total of $15,200.00, in addition to the damages that the trial court awarded him for the

**528**

loss of the option period in the amount of $7500.00.

When the landlord wrongfully evicts the tenant, the latter shows a cause of action for damages by averring and proving the following facts: (1) The existence of an unexpired contract of renting; (2) occupancy of the premises in question by the tenant; (3) eviction or dispossession by the landlord; (4) damages attributable to such eviction. Reavis v. Taylor, 162 S.W.2d 1030 (Tex.Civ.App.1942, wr. ref. w. o. m.); 27 Tex.Jur. 280, § 160. It has been held that the measure of damages for the breach of a contract of lease by the lessor is such damages as naturally and proximately result from the breach. Settegast, et ux. v. Foley Bros. Dry Goods Co., 297 S.W. 676 (Tex.Civ.App.1927, wr. ref.); 35 Tex.Jur. 2d §§ 67, 75 and 77, Landlord & Tenant; Luettich v. Putnam, 287 S.W.2d 727 (Tex. Civ.App.1956, ref. n. r. e.). Article 5236, Vernon's Ann.Tex.St., states:

"Should the landlord, without default on the part of the tenant or lessee, fail to comply in any respect with his part of the contract, he shall be responsible to said tenant or lessee for whatever damages may be sustained thereby; * * *."

See also Belcher v. Bullion, 121 S.W.2d 483 (Tex.Civ.App.1938); Richker v. Georgandis, 323 S.W.2d 90 (Tex.Civ.App.1959, n. r. e.). The question before us then is: Why should not the appellee be entitled to damages for the loss sustained by him during the period of time he was evicted from the premises?

It was undisputed and specifically found by the court that the appellee was wrongfully evicted from the premises in November, 1960. The court found that the appellee would have continued to receive at least $400.00 per month profit from the leased premises until the end of the primary term, i. e., December 31, 1963. The trial court did not make any findings of ·fact·upholding any of the defensive theories advanced by the appellants. The appellants did not object to the findings of fact or conclusions of law filed by the trial court; appellants did not contend that the same were not supported by sufficient evidence; nor did the appellants make any additional request for findings of fact or conclusions of law.

The appellants, in their brief, have admitted that the appellee would be entitled to the damages for the loss of profits during the period from the date of the eviction until the end of the primary term. At one place in their brief where they argue against the trial court's judgment of $7500.00 for the loss of profits for the destruction of the option, they say: " * * * It seems to us that the most favorable position appellee could possibly take in this connection would be that his profits for each month during such period would have been $400 and that, accordingly, his loss, during such period, would be $14,400. Such a position would seem to be supported by the trial court's formal finding No. 23 (Tr. 39)." The appellants then pose this appropriate question to this Court: "In these circumstances, it properly may be wondered why the trial court did not enter judgment on the basis of such finding awarding to appellee an adjudication that he recover of appellants the sum of $14,400." Continuing, appellants state: " * * * The record contains evidence showing, beyond dispute, that the 'established business' which the eviction shut down and which, but for the eviction, would have produced the aforementioned $14,400 in profits, was not a lawful business but instead was one operating outside the law." Appellants argue: " * * * If the business shut down by the eviction had been a legal one then profits lost during the shut-down would perhaps be recoverable. * * *"

Appellants refer us to the testimony of Westover. He testified, on cross examination, that during the month he was operating the business as· sub-lessee of the appellee, he occasionally sold mixed drinks

to non-members of the club. Westover further testified that while he was operating the club some of the members or guests occasionally gambled. Appellants argue, that in view of this conclusive evidence the trial court was required to find, and it should be presumed in support of its judgment, that the trial court impliedly found, that the business was an illegal enterprise. Appellants refer us to Bednarz v. State, 142 Tex. 138, 176 S.W.2d 562 (1944). This case recites the proposition of law under Rule 299, T.R.C.P., that all omitted findings necessary to support the judgment will be supplied by presumption in support of the judgment. In the Bednarz case, the trial court filed specific findings of fact, one of which supports the judgment. The court went on to say that if this finding was insufficient and if any additional findings were needed, then under Rule 299, such omitted additional findings in support of the judgment will be supplied. Expressed findings made by a trial judge cannot be extended by implication to cover further independent issuable facts. Duncan v. Willis, 157 Tex. 316, 302 S.W.2d 627 (Sup.Ct.1957); Appellate Procedure in Texas, pages 10–21, § 10.5. The trial court did not make any findings concerning any illegal operation or any other findings whatsoever that would lend support to appellants' theory of defense. In fact, the trial court found that the reason that the appellants locked Westover out of the premises was because of non-payment of rent. (Appellants later admitted it had been paid). The failure of the appellants to request additional findings of fact effects a waiver of the ground of defense, no element of which has been found. Pinson v. Dreymala, 320 S.W.2d 152 (Tex.Civ.App.1958, wr. ref. n. r. e.); McDonald on Texas Civil Practice, § 16.09. Here, appellee's profit was from his sub-lease to other sub-lessees, not from the operation of a private club. There was no evidence that appellee had any knowledge of any gambling or any open saloon operations. The appellants deny that they knew anything of the operation of the club either. The appellants' attorney, on cross-examination of Westover, proved that Westover had been convicted of two felony offenses for which he served time in the penitentiary. Appellants, by their own cross-examination have attacked the credibility of Westover. The trial court did not have to believe Westover's testimony. There was no other evidence in the record pertaining to any illegal operations.

■■■ The appellants state that the law avoids all contracts founded upon a violation of the criminal law or forbidden by public policy. Citing Kauffman v. Babcock, 67 Tex. 241, 2 S.W. 878 (1887). However, there was nothing in this lease nor was there any testimony in the record indicating to us that this lease was founded upon a violation of the law. Where the illegality does not appear on the face of the contract it will not be held void unless facts showing the illegality are before the court. There is never a presumption of illegality, but on the contrary, there will be a presumption of legality. Lewis v. Davis, 145 Tex. 468, 199 S.W.2d 146 (1947) and cases cited; Kahn v. Harris, Upham & Co., 247 S.W.2d 139 (Tex.Civ.App.1952), aff'd., Sup.Ct., 151 Tex. 655, 253 S.W.2d 647. The appellants knew the purpose for which the appellee had leased the premises and there was no evidence that the purpose for which the premises were leased was illegal or forbidden by public policy. There was no forfeiture provision in the lease providing for the right of the lessors to re-enter in the event that the premises were being used for any unlawful purpose. At common law, the lessee does not forfeit his lease by using the demised premises for illegal purposes in the absence of a provision in the lease contract for a forfeiture in such cases. Moore v. Kirgan, 250 S.W.2d 759 (Tex. Civ.App.1952); 36 Tex.Jur.2d 104, § 253; 32 Am.Jur. 730, § 864; 52 C.J.S. Landlord and Tenant § 460, p. 185; Wood v. Ingram, 275 S.W. 397 (Tex.Civ.App.1924, wr. dism.).

The case has been fully developed and all facts necessary to the determination of the rights of the parties have been presented and passed on by the trial court. Where the trial court's findings are not challenged on any point of appeal, they are binding upon the parties and must be accepted by the Court of Civil Appeals. Thompson v. Larry Lightner, Inc., 230 S.W.2d 831 (Tex.Civ.App.1950, n. r. e.); Curry v. E. E. Stone Lumber Co., 218 S.W. 2d 293 (Tex.Civ.App.1948, n. r. e.). Findings of fact were filed by the trial court which are supported by the evidence and which would entitle the appellee to additional damages. It appears to us that the trial court improperly entered judgment for a lesser amount to which judgment the appellee objected and complained of the ruling of the trial court by cross points in his brief. Rule 420, T.R.C.P. It therefore follows that where the findings of the court would enable the appellate court to ascertain by computation a correct judgment, the Court has the duty to enter the judgment that should have been rendered below. See Rule 434, Texas Rules of Civil Procedure; Redgrave v. Wilkinson, 208 S.W.2d 150 (Tex.Civ.App.1948, wr. ref., n. r. e.); Traders & General Ins. Co. v. Jones, 201 S.W.2d 105 (Tex.Civ.App.1947, wr. ref. n. r. e.); Yarbrough v. Booher, 141 Tex. 420, 174 S.W.2d 47, 150 A.L.R. 1369 (1943); Palmer v. Katz, 210 S.W.2d 451 (Tex.Civ. App.1948, n. r. e).

Here the trial court found that the appellee is entitled to $400.00 per month profit for the remaining period of the primary term, i. e.; to December 31, 1963. The evidence shows that although appellee was evicted on November 11, 1960, he received $400.00 from his sub-lessee for the period from October 19th to November 19, 1960. It therefore follows that the appellee would be entitled to a judgment for the period from November 19, 1960, to December 31, 1963, or thirty-seven months and thirteen days. This would be $14,967.74 in addition to the $7500.00 awarded in the trial court judgment. Such judgment should be $22,467.74, with interest thereon at six per cent (6%) from October 22, 1963, the date the judgment was entered in the lower court.

Appellee, as a part of one of his cross points, argues that he should be entitled additionally to the sum of $900.00 which was prepaid as rent at the time he executed the lease. There were no findings of fact requested or found by the trial court substantiating the contention set forth by the appellee. In fact, the evidence shows that the appellants gave appellee credit for at least one month that the monthly rent was not paid during the early part of the lease. This portion of appellee's counter point is overruled.

Accordingly, the judgment of the trial court is affirmed in part, is reversed and rendered in part so that appellee, A. C. Carte, shall have judgment against appellants Charles McKenzie and Robert McKenzie, jointly and severally, for $22,467.74, with interest at six per cent (6%) per annum from October 22, 1963, and all costs of Court.

SHARPE, Justice (dissenting).

I respectfully dissent. It is my opinion that this Court cannot properly affirm the award of $7,500.00 made by the trial court to appellee Carte nor can it render judgment increasing the amount of his recovery by approximately $15,000.00.

The problem which this record presents to us is a basic one. It relates to the important subject of the rights of a tenant upon the premature repudiation of his lease by the landlord. What rights does a tenant have in such a situation? The answer to such inquiry is not in doubt. He may travel on either of two roads but not on both. He may either accept the repudiation of the lease (i. e., he may affirm the action of the landlord in repudiating the lease) and sue for damages caused by the

breach; or he may refuse to accept the repudiation of the lease (i. e., he may disaffirm the action of the landlord in repudiating the lease) and seek its enforcement plus recovery of damages sustained during his exclusion from the demised premises.[1]

In this case we have a tenant, Carte (appellee), who was confronted with the choice of deciding which of these roads he would travel on. His landlord, the McKenzies (appellants), evicted him and thereby prematurely repudiated the lease[2] covering premises occupied by a so-called private club[3] then operated by a subtenant.

Carte, thus put to his election, chose to try to travel both of the roads available to him. He filed his suit against the McKenzies and relied upon pleadings which set forth both of the inconsistent rights[4]

which he had by virtue of the conduct of the McKenzies repudiating the lease.

On the one hand, he urged, as a ground of recovery, a cause of action based on the theory that he was entitled to a judicial declaration that the lease was still in force despite its having been repudiated by the McKenzies (a theory which necessarily involved the assertion that he was refusing to accept the action of the McKenzies in repudiating the lease).[5] On the other hand, Carte urged, as another and inconsistent ground of recovery, a cause of action based on the theory that he was entitled to recover, as special damages, all profits he would have made during the entire period that he would have had use of the demised premises had there been no repudiation of the lease and had he exercised his option in the lease (a theory which necessarily in-

1. Greenwall Theatrical Circuit Co. v. Markowitz, 97 Tex. 479, 79 S.W. 1069, 65 L.R.A. 302 (1904); Wellington Railroad Committee v. Crawford, 216 S.W. 151, 156 (Tex.Com.App.1919); Bailey v. Sovereign Camp, W.O.W., 116 Tex. 160, 288 S.W. 115, 116, 47 A.L.R. 876 (1926); Lamar v. Hildreth, 209 S.W. 167, 170 (Tex.Civ.App., 1919, error refused); Bennett, The Modern Lease, 16 Tex.L. Rev. 47 (1937).

2. The lease in question was executed by the McKenzies to Carte. The primary term ended December 31, 1963, but the lease gave Carte an option to extend it for ten additional years. This last-mentioned period will be referred to here as the "option period" of the lease. On November 10, 1960, the McKenzies excluded Carte's subtenant (Westover) by locking him out and this exclusion was almost immediately thereafter applied also to Carte. Thereupon, Carte promptly brought the present action against the McKenzies.

3. Carte's subtenant, Westover, gave testimony tending to show that the business which was being operated on the demised premises at the time of the eviction was that of an open saloon and gambling place. Carte did not deny this testimony. Nor was this testimony otherwise contradicted.

4. It is important to note the distinction between a situation where a party has a single right and is permitted by law to employ for its redress either of two inconsistent remedies, and the situation where a party has a choice or election between inconsistent rights, with each right having its own remedy. The latter situation was the one that Carte had to face. He was confronted with a choice between inconsistent rights. The applicable law in regard to the distinction just mentioned is well set out in Seamans Oil Co. v. Guy, 115 Tex. 93, 276 S.W. 424 (1925), and Seamans Oil Co. v. Guy, 114 Tex. 42, 262 S.W. 473 (1924). See also 21 Tex.Jur.2d, Election of Remedies, sec. 2, p. 198: "Although the decisions concerning the doctrine of inconsistent rights and remedies are in confusion in this State, there exists an important distinction between an election of rights and remedies. The former is a choice between inconsistent substantive rights, while the latter is a choice between forms of action or procedure." See also Bailey v. Sovereign Camp, W.O.W., 116 Tex. 160, 288 S.W. 115, 116, 47 A.L.R. 876 (1926).

5. Carte's petition, with reference to this ground of recovery, alleged that he had been unlawfully excluded from the demised premises and prayed that "plaintiff have his lease declared to be in full force and effect, and that plaintiff be placed in possession of such premises."

**532**

volved the assertion that he was accepting the McKenzies' *repudiation of the lease*).[6]

There was nothing legally improper about Carte pursuing these inconsistent grounds of recovery *during* the trial since the law would allow him then to keep both roads open temporarily; but sometime after the trial and before judgment he was bound to make an election and limit himself to travel on only one of these roads.[7] He did not do this. He did not manifest a choice, either by motion for judgment or otherwise. He left entirely to the trial court the task of determining the required election. But that court did not do so. Instead, the lower court took the unusual action of entering a judgment that in effect left Carte traveling on both roads—a result which is legally impossible.

What the trial court did was to sustain inconsistent grounds of recovery. The trial court brought about this result by including in its judgment two adjudications which are mutually exclusive. One of these adjudged that the lease was still in force.[8]

This adjudication was part of the relief which Carte sought and is not challenged on this appeal. The other adjudication in the trial court judgment awarded Carte $7,500.00. This award represented profits the trial court found he would have made during the option period of the lease had there been no eviction.[9] This latter adjudication is the one which the McKenzies, as appellants, attack on this appeal. Their complaint is that this adjudication is without support in the trial court findings.

The presence in this record of these inconsistent adjudications (one presupposing that Carte did not accept the action of the McKenzies in repudiating the lease and the other presupposing that Carte did accept such repudiation) operates, in my opinion, to produce legal consequences which are incompatible both with the relief granted Carte below (i. e. the relief of awarding him $7,500.00) and the relief which this Court now proposes to grant to him (i. e. the relief of awarding him an additional sum of approximately $15,000.00). In order

---

6. In Carte's supplemental petition he particularly alleged that " * * * plaintiff has been deprived of the income in excess of the monthly rental, to-wit, the sum of Four Hundred Dollars ($400.00) per month for the unexpired term of the lease and the period of the option to which he was entitled and in reasonable probability would have exercised, to the plaintiff's loss and damage in the amount of Sixty two thousand four hundred Dollars ($62,400.00) all of which the defendants knew or upon reasonable inquiry would have known."

7. Wood v. Williams, 46 S.W.2d 332 (Tex. Civ.App.1932, writ dismissed); Roark v. Prideaux, 284 S.W. 624, 629 (Tex.Civ. App.1926), affirmed, 291 S.W. 868 (Tex. Com.App., 1927); Ruberoid Co., Inc. v. Briscoe (5th Cir., 1961), 293 F.2d 712; Reynolds Brothers, Incorporated v. Dodson, 380 S.W.2d 678 (Tex.Civ.App., 1964, n.w.h.).

8. The judgment of the trial court granted Carte such relief in the following language: "The lease agreement entered into by and between Charles McKenzie and Robert McKenzie, as Lessor, and A. C. Carte, as Lessee, on the property situat-

ed in Nueces County, Texas, and described as follows: (description of the property is here omitted). Be and the same is hereby declared to be in full force and effect, provided further, however, that during the period of time commencing the 11th day of November, 1960 until the date possession is restored to the plaintiff, A. C. Carte, the rental due and to fall due under such lease agreement shall be abated, * * *."

9. Formal trial court finding No. 29 was as follows: "The Plaintiff would, in reasonable probability, have realized a profit during such option. After deducting rental payments, maintenance, replacement and other costs, the sum of Seventy five Hundred Dollars ($7,500.00), if paid now in cash, would reasonably compensate the Plaintiff for such lost profits." The trial court judgment did not make an award to Carte for damages allegedly suffered during the primary term of the lease but, in accordance with well-settled law, provided that the rental would be abated during the period Carte was excluded from the demised premises. See 35 Tex.Jur.2d, Landlord & Tenant, Sec. 129, p. 633.

to demonstrate the correctness of this position, it will be necessary that we analyze these inconsistent adjudications.

Let us first consider the adjudication that the lease still was in full force and effect. The elements of the ground of recovery sustained by that adjudication were these: (a). Act of the McKenzies in wrongfully evicting Carte and thereby repudiating the lease; and (b). that Carte did not accept the McKenzies' repudiation of the lease. The formal trial court findings established the first of these elements and the second element, being supported by evidence,[10] must be supplied by presumption in support of this adjudication. Rule 299, T.R.C.P.[11]

Next, let us consider the adjudication in the trial court judgment, which awarded Carte $7,500.00 as damages for loss of profits he would have made during the option period of the lease had there been no eviction. The elements of the ground of recovery sustained by such adjudication were these: (a) Act of the McKenzies in

wrongfully evicting Carte and thereby repudiating the lease; (b) that Carte did accept the McKenzies' repudiation of the lease; and (c) the amount of profits Carte would have made during the option period but for the eviction. The formal trial court findings covered the first and third of these elements, and the second element, being supported by evidence,[12] must be supplied by presumption in support of this adjudication. Rule 299, T.R.C.P.

It will be seen from the foregoing that the record discloses two evidence-supported presumed findings on a material issue (i. e. the issue whether Carte did or did not accept the McKenzies' repudiation of the lease), one of these findings establishing the negative of such issue (i. e. that Carte did not accept such repudiation), and the other of these findings establishing the affirmative of such issue (i. e. that Carte did accept such repudiation). These two findings on this material issue are in irreconcilable conflict. Since they are mutually destructive they nullify each other.[13]

---

10. A sufficient evidentiary predicate for presuming a finding that Carte refused to accept the McKenzies' repudiation of the lease is to be found in the fact that in the trial court he urged never abandoned and relied on the theory that he was entitled to a judicial declaration that the lease was still in full force and effect. Seamans Oil Co. v. Guy, 115 Tex. 93, 276 S.W. 424 (1925); Seamans Oil Co. v. Guy, 114 Tex. 42, 262 S.W. 473 (1924).

11. Rule 299, T.R.C.P., provides: "Where findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumption of finding upon any ground of recovery or defense, no element of which has been found by the trial court; but where one or more elements thereof have been found by the trial court, omitted unrequested elements, where supported by evidence, will be supplied by presumption in support of the judgment. Refusal of the court to make a finding requested shall be reviewable on appeal."

12. A sufficient evidentiary predicate for presuming a finding that Carte accepted

the McKenzies' repudiation of the lease is to be found in the fact that in the trial court he urged and relied on and never abandoned the theory that he was entitled to recover as special damages all profits he would have made during the option period had there been no eviction. Seamans Oil Co. v. Guy, 115 Tex. 93, 276 S.W. 424 (1925); Seamans Oil Co. v. Guy, 114 Tex. 42, 262 S.W. 473 (1924).

13. The situation we have here is legally no different from that which exists when there is an irreconcilable conflict between jury findings as to a material issue. When such a conflict exists between jury findings they destroy each other. This is illustrated in Fidelity & Casualty Co. of New York v. McLaughlin, 134 Tex. 613, 135 S.W.2d 955, 958 (1940), where the Supreme Court held as follows: "There is a rule of law that conflicting findings destroy each other and leave no findings on the issues involved. This rule is too well established to require citation of authorities. This rule is as self-evident as the axiom that two bodies of the same size cannot occupy the same space at the same time." See also Pearson v. Doherty, 143 Tex. 64, 183 S.W.2d 453, 455 (1944), where the Supreme

The inevitable consequence is that the record herein is left without any finding on this material issue whether Carte did or did not accept the McKenzies' repudiation of the lease. This is a matter of the utmost importance because the total absence of a finding on this issue presents us with a record which does not contain a legally sufficient foundation either for the adjudication made by the trial court of which the McKenzies complain (i. e. the adjudication awarding Carte $7,500.00 for damages during the option period) or for the adjudication proposed to be rendered by this Court (i. e. an adjudication awarding Carte an additional sum of approximately $15,000.00 for damages allegedly suffered during the primary term after the eviction).

The issue of whether Carte did or did not accept the McKenzies' repudiation of the lease is, in my opinion, material to each and every possible theory of recovery which Carte might assert in this case. If he should take the road of disaffirming the action of the McKenzies in repudiating the lease (which is essential to his securing a declaration that the lease is in full force and effect) he is required to secure a finding that he did not accept the McKenzies' repudiation of the lease. On the other hand, if he should take the road of affirming the action of the McKenzies in repudiating the lease (which is essential to his recovery of damages on account of lost profits during the option period) he is required to secure a finding that he did accept the McKenzies' repudiation of the lease. In this case the circumstance that the present record is without a finding on such material issue prevents the remaining trial court findings from constituting a proper legal foundation for *any* judgment in favor of Carte. In this condition of the record the case, in my opinion, ought to be sent back to the lower court for a new trial. Only in the trial court can a finding be obtained on such material issue.

Court held as follows: "The rule is that there is no priority of findings, either in degree or importance, and where two

I believe that the foregoing discussion demonstrates the insufficiency of the record to support the trial court judgment award of $7,500.00, complained of by appellants, and which is clearly shown by the findings of fact and conclusions of law to have been awarded to Carte for damages suffered on account of alleged lost profits during the option period of the lease which commenced after the expiration of the primary term on December 31, 1963. I would sustain appellants' points complaining of such award and remand the case for trial. This action would dispose of appellants' portion of this appeal.

Let us now pass to a separate discussion of Carte's contentions, included under his cross points of error, that the judgment in his favor should be increased in the amount of approximately $15,000.00, on account of his exclusion from the demised premises during the primary term of the lease.

It is highly important here to keep in mind that the judgment of the trial court did not award to Carte a recovery for damages allegedly suffered by him during said primary term. The effect of this is to deny such recovery. By his cross points Carte now asks this court to disapprove the action of the trial court in such respect and to render a judgment which will award him (in addition to the $7,500.00 representing damages for the option period) a recovery of approximately $15,000.00 for damages allegedly suffered during the primary term of the lease.

In my opinion we cannot sustain Carte's last-mentioned contentions because of the aforementioned failure of the total record in this case to supply a finding on the important issue as to whether Carte did or did not accept the McKenzies' repudiation of the lease. We are again confronted with such fatal omission as well as the conflicts which have heretofore demonstrated, i. e., a judgment declaring on the one hand

findings with respect to a material fact are such that both cannot be true, then neither can stand."

that the lease is in full force and effect, which is necessarily based upon a finding that Carte *did not accept* the McKenzies' repudiation of the lease, and, on the other hand, an award of damages in the same judgment which is necessarily based upon a finding that Carte *did accept* such repudiation.

It is undoubtedly true that upon a proper showing Carte would be entitled to recover damages for the period of time he was wrongfully excluded from the demised premises during the primary term. However, the theory upon which he relies for such recovery is highly important and must be consistent with the other relief which he ultimately obtains from the trial court. Carte cannot be awarded damages for the option period on one theory (which in this case would necessarily have to be based upon a finding that he *did accept* Mc-Kenzies' repudiation of the lease), and at the same time be awarded damages suffered during the primary term on another theory, (i. e., that he *did not accept* the repudiation by the McKenzies). This is not simply a fine-spun legal distinction, but is something that makes a real difference in the ultimate recovery. If Carte had elected to affirm the contract (and take the position that he did not accept the McKenzies' repudiation of it), he could recover (in addition to a declaration that his lease was in full force and effect) all properly established damages from the date he was evicted to the date he became entitled to regain possession, which in this case was prior to the expiration of the primary term.[14] On the other hand, if Carte had elected to accept the McKenzies' repudiation of the lease and sued for damages on account of its breach he could recover properly established damages from the date of his eviction to the end of the primary term, which in this case is a period of over three years. It is

thus apparent that damages recoverable by Carte for his exclusion from the demised premises during the primary term under the first theory could be a lesser amount than the damages which are recoverable under the second theory. Not only is the legal theory different, but the period of time for which damages may be recovered is different, with the consequent effect on the amount of recovery.

The effect of the failure of the record in this case to supply a finding on the important issue as to whether Carte did or did not accept the McKenzies' repudiation of the lease is further pointed up when we consider the basis upon which damages might be recovered by Carte for his exclusion from the demised premises during the primary term along with the basis for an award of damages for lost profits allegedly suffered during the option period. The award of damages for the option period can be based only upon the premise that Carte did accept the McKenzies' repudiation of the lease and an election by him to sue for damages on account of breach of contract. A recovery of damages suffered during the primary term cannot be based on that same premise, however, under the judgment declaration that the lease continued to be in full force and effect. Such declaration would permit a recovery of damages suffered for the exclusion of Carte from the demised premises during the primary term only upon the premise that Carte did not accept the McKenzies' repudiation of the lease.

I believe that the discussion of Carte's contention that he is entitled to an additional recovery of approximately $15,000.00 for damages suffered during the primary term of the lease could rest at this point since I see no escape from the conclusion that there is wholly lacking in this record a proper legal foundation for sustaining such

14. Such period might have involved only a brief lapse of time depending upon when the case was tried and decided. For example, if judgment had been entered on May 10, 1962, the last day of the trial herein, a period of approximately six months would have been involved in Carte's exclusion from the demised premises.

position. However, there are additional reasons why such award should not be made to Carte by this Court.

I believe that the provisions of Rule 299, T.R.C.P., prevent this court, in the present state of the record, from sustaining Carte's cross points and here rendering judgment allowing him a recovery for damages allegedly suffered during the primary term of the lease.

Carte necessarily had to ultimately elect in connection with his attempted recovery for damages sustained during the primary term of the lease, whether he relied on the theory that he did accept McKenzies' repudiation of the lease or on the theory that he did not accept the same; and the trial court could not properly render judgment in favor of Carte for damages until an election of rights was made by him or determined by the court. In the state of the record in this case, this court is not authorized to supply a finding on such material issue of whether Carte did or did not accept McKenzies' repudiation of the lease, and cannot properly render judgment for Carte on his cross points, under which he claims the right to recover $15,200 for damages during the primary term of the lease. There is no single finding of fact or combination of findings which conclusively establish Carte's right to a recovery for damages allegedly suffered during the primary term of the lease. Even if we assume that the trial court made a finding on one or more elements of Carte's cause of action for damages during the primary term of the lease, it would be our duty under Rule 299, T.R.C.P., to supply by presumption any omitted unrequested elements supported by evidence *in support of the judgment which denied Carte a recovery* for damages during the primary term. This would preclude us from sustaining Carte's cross points and, therefore, we could not allow him a recovery on account thereof.

The foregoing matters have been discussed in the light of the more specific contentions urged by the parties on this appeal. I believe that appellants have relied upon comparatively restricted contentions which require a reversal of the $7,500.00 award in favor of Carte, and that Carte has not established a basis upon which this court can properly allow him the recovery which he seeks for damages during the primary term of the lease, which recovery was denied to him by the trial court. However, since it is my view that a new trial should be granted in this case, there are certain matters, either hereinbefore not mentioned or not fully discussed that, in my opinion, militate in favor of the conclusions I have reached and to which I will now refer.

One of such matters involves the undisputed fact that Carte did not actually exercise the option to renew the lease for an additional ten year period after the expiration of the primary term. The lease specifically provided that such option had to be exercised by Carte during the month of November, 1962, by giving written notice to the McKenzies. The trial of this case took place in the court below on May 8th, 9th and 10th, 1962, some six months before the option could have been exercised by Carte; however, the judgment was not rendered until October 22, 1963, some seventeen months later. The Statement of Facts herein reflects only what occurred during the actual trial and there is no showing therein or in the Transcript as to what took place between May 10, 1962, and October 22, 1963. There is respectable authority for the proposition that such an option provision must be strictly complied with in order to bring the additional term into existence.[15]

On the trial of this case Carte took the position that in reasonable probability he would have exercised his option to extend the lease for such additional term, but that he would not exercise such unilateral privi-

---

15. Sec. 36 Tex.Jur.2d, Landlord and Tenant, Sec. 245, p. 90, and cases therein cited.

lege because of McKenzies' eviction of him during the primary term. Carte's position in such respect contributed greatly to the fatal conflicts inherent in the adjudications finally made by the trial court. Carte asked for and received a judgment declaration that the contract was in "full force and effect" and at the same time took the position that he was not bound by one provision of it (the option clause), and successfully obtained an adjudication which allowed him to recover damages for its breach, based upon alleged loss of profits during the option period. There is no question that the lease herein would end on December 31, 1963, unless Carte exercised his privilege under the option clause to extend it for an additional ten years. So long as Carte preserved a right to claim that the lease should be declared to be in full force and effect, the option clause of the contract was an integral part of such position. An option clause of the kind involved here gives the lessee a choice as to whether he will allow the lease to expire at the end of the primary term or whether he will extend it for an additional term. The lessee can decide either way, with or without a reason, and the exercise of this unilateral privilege is not dependent upon the consent of the lessor. Neither the lessor nor the lessee can enforce the lease for an extended term unless the lessee exercises such privilege in favor of bringing it into existence. If the lessee does elect to extend the lease under the option clause, then a bilateral contract results, which includes the obligation of the lessee to pay the rental provided during the extended term. The value of the option lies in the right of choice which is given to the lessee.[16] It seems to me that there is ample

support in this case for the proposition that any basis for a recovery on account of the option period has been effectively eliminated in view of Carte's pleadings and his failure to show on the trial of this case that he intended to actually comply with the option clause by giving written notice that he would exercise his unilateral privilege to extend the lease for the additional ten year period, or that he had a valid legal ground which would excuse him from doing so. If Carte desired to preserve his rights under the option clause so that he could exercise his privilege to extend or not extend the lease for the additional ten year period at a time later than that provided in the option clause, he could have applied to the trial court for equitable relief in such connection, particularly in view of the pendency of this suit and the matters to be resolved therein;[17] and in such manner Carte could have ascertained whether he was required to comply strictly with the terms of the option clause or if he would be permitted to exercise his privilege thereunder at some later time when the issues in the case were resolved or at such other time as might be properly fixed by the court in accordance with the equities of the case. However, if the premise that the option period has been eliminated as a basis for any recovery herein is not correct, still, a consideration of such concept points up the impropriety of allowing Carte to carve out a cause of action for damages on account of the claimed breach of one provision of the contract while insisting upon the performance of its remaining provisions. I believe that such result is not permitted under long established principles and should not be approved by this Court.[18]

16. In Rosson v. Bennett, 294 S.W. 660, (Tex.Civ.App., 1927, n.w.h.), the court said: "A contract for the grant of an option is necessarily unilateral. Its very purpose is to enable the grantee to exercise the particular right therein contracted for or not, as he may elect, and its value consists in that privilege."

17. Jones v. Gibbs (2 cases), 133 Tex. 627, 130 S.W.2d 265; 133 Tex. 645, 130 S.W. 2d 274 (1939).

18. In Seamans Oil Co. v. Guy, 114 Tex. 42, 262 S.W. 473, 474 (1924), the court said: "At that time he (Respondent Guy) had the right to affirm the invalidi-

**538**

Another matter not heretofore fully discussed in this opinion relates to the business known as "The Oil Patch" which was located on the demised premises. Carte personally operated this so-called private club until January 5, 1957, when he subleased to C. O. Scott. Carte suffered from a nervous condition and got out of the business on his doctor's advice, moving his residence to Crystal City, Texas. At the time of the eviction Carte had not personally operated "The Oil Patch" for a period of almost four years. During such period, after he left the business, Carte had three sub-lessees, C. O. Scott, heretofore mentioned, J. B. Rathmell and B. M. Westover. Scott sold out to Rathmell on July 19, 1958, and Rathmell sold out to Westover on or about October 11, 1960. The amount which Scott agreed to pay Carte was reduced from $7,200.00 annually to $5,200.00 after Scott operated for a time. Rathmell agreed to pay Carte $4,800.00 per year, or $400.00 per month. When Rathmell sold out to Westover, Carte made a deal with Westover on a one month trial basis, Westover agreeing to pay a total of $700.00, of which $400.00 was for Carte and $300.00 was for the rental payable to the McKenzies. However, Westover did not make payment of the rental due to the McKenzies for the month of November, 1960,

and Carte finally tendered it to Mrs. Bob McKenzie at a time when it was clearly overdue. In such connection the trial court found that the McKenzies had agreed to accept such rent from Westover, but if he did not pay it that they would accept it from Carte; that Carte tendered the rent in cash but the same was refused; and that such refusal was in violation of the McKenzies' agreement with Carte.

The illegal practices carried on at the demised premises may have been the reason why the trial court rejected the ground of recovery now under consideration, i. e., an award of damages to Carte for loss during the primary term of the lease. The McKenzies took the position that the reason for this rejection was that the evidence conclusively proved that the profits lost by Carte, if any, were profits from an illegal business, to-wit, an open saloon and gambling place, and therefore were in any event not recoverable under the principle,— announced by Judge Willie in Kauffman v. Babcock, 67 Tex. 241, 2 S.W. 878, 880 (1887), to the effect that the law "will not give damages for impairing the value of a business which cannot be pursued except in defiance of" both the criminal law and public policy. The McKenzies may be correct in this rationalizing the reason for the

---

ty of the contract on account of fraud and the many other matters alleged, or he had the right to affirm its validity and receive the benefits thereunder. These rights were wholly inconsistent." In Texas Seed & Floral Co. v. Chicago Set & Seed Co., 187 S.W. 747 (Tex.Civ.App. 1916, wr.ref.), the court said: "The defendant in error could have accepted the repudiation at the time and sued for the damages on the breach, or it could elect to consider the contract as still in force. One party cannot by himself rescind a contract. The renunciation itself does not amount to a rescission." In Mazzola v. Lucia, 109 S.W.2d 273 (Tex.Civ.App., 1937, wr.ref.), the court said: "That one may not accept the benefits of a contract without being bound by all of its provisions is a well-recognized equitable principle. * * * By asserting his right under the mortgage contract, he made no effort to avoid any of the provisions

of the mortgage contract. Instead, he relied on every provision of it." In National Aid Life of Oklahoma City, Okl. v. Adams, 157 S.W.2d 957 (Tex.Civ.App., 1942, wr.dism.), the court said: "The principle, which must rule the judgment in this case, is, that one cannot enforce an advantage existing only by virtue of a contract, and at the same time repudiate the contract as one not binding upon him, thereby avoiding some of its provisions." In National Life Co. v. Thomason, 160 S.W.2d 582 (Tex.Civ.App., 1942, n.w.h.) the court said: "The law affords two distinct and inconsistent remedies for the wrongful breach of a contract, viz., the injured party may abandon the further performance of the contract and sue the offending party at law for the recovery of damages resulting from the breach, or he may, at his election, stand on the contract and sue in equity for its specific performance."

trial court's rejection of the ground of recovery now under consideration. But I am unable to agree with their contention that the proof conclusively shows that the business operated by Carte was completely illegal. I believe it proper to say, however, that the evidence does very strongly tend to show that on occasions the business was being operated as an open saloon and gambling place.[19]

This matter of whether Carte's business was in fact an illegal one should be fully developed in the event of another trial, since it is clear, in my opinion, that lost profits, if any, sustained by Carte on account of the eviction would not be recoverable should it be established by proper pleadings and proof that the business operated on the demised premises was an open saloon and gambling place. If I understand Carte's position correctly, it is that even if illegality of his business were shown he still could recover lost profits sustained by him on account of the eviction. This, in my opinion, is not the law. From time immemorial, the rule has been that no man shall take advantage of his own wrong. As stated in Broom's Legal Maxims (2d ed. 1850), p. 163: "It is a maxim of law, recognized and established, that no man shall take advantage of his own wrong; and this maxim, which is based on elementary principles, is fully recognized in courts of law and of equity, and, indeed, admits of illustrations from every branch of legal procedure." This maxim, in my opinion, would operate to prevent Carte from recovery of lost profits if in fact an open saloon and gambling place was being operated on the demised premises. A wrongdoer is never permitted to use the court to further his own wrongdoing. The law will leave him where it finds him.

Finally, it seems to me that, among others, the following conclusions are compelled by the present record: that Carte was required to obtain a finding, as an essential element of the adjudication awarding him $7,500.00,

19. Carte's subtenant, Westover, who was in charge of the club known as "The Oil Patch" on the demised premises, testified, without contradiction that mixed drinks were served to *non-members* of the club and that gambling took place there. At one time he testified that both dice and black jack were involved but he later said only black jack went on. He also admitted he had been convicted of two felonies as well as misdemeanors. His testimony concerning his criminal record tended to show that he was convicted of theft by false pretext in 1958 and was sentenced to 8 years; that he was convicted in 1961 for the offense of swindling by check; and that at the time of the trial he was still under sentence imposed for the latter offense. Westover was unable to state the number of members of the club but he said none paid dues under his operation. He said that during his brief tenure of approximately a month no meeting of the members of the club was held and that no election of officers was conducted. He further testified that there were no facilities for preparation of food on the premises but that arrangements could be made for a caterer, if desired; that usually there was no orchestra and that he only had music when he found it convenient on special occasions; and that unescorted ladies would come to the club—and were a benefit to the business—but that he did not encourage this. The evidence also shows that if Westover proved satisfactory after the one month trial period that he would get a lease like the one that Rathmell had with Carte. The Rathmell lease, among other things, contained the following provision: "In any event wherein said property shall become inoperable as a mixed drink club by operation of law, this contract shall become void, inoperable and shall cease immediately and the rent shall be paid up to the date said business shall become inoperable." In addition to other testimony, Carte said that he had installed a two-way mirror in one section of the place and that there was a chair operated by a switch or button which was used as a hideaway for personal things which he did not want anybody to fuss with. Carte further testified he told Bob McKenzie that he didn't think Westover could run the club satisfactorily; and on another occasion when Bob McKenzie complained about "traffic coming from upstairs", Carte warned Westover "as I told you, we had to conduct this in such a way that all of the parties would be satisfied with it."

that he did accept the McKenzies' repudiation of the lease; that such a finding is not included in the formal findings of the trial court; that such finding may be supplied by presumption, under Rule 299, T.R.C.P., in support of the said adjudication, but the same would be in irreconcilable conflict with a contrary finding, that Carte did not accept the McKenzies' repudiation of the lease, which last finding we must supply by presumption under the said Rule in support of the adjudication declaring the lease to be in full force and effect; that, in such circumstances, there is a fatal conflict between such findings, and, in the absence of a formal finding on the issue, the record is left barren of any finding, express or implied, on the material issue of whether Carte did or did not accept the McKenzies' repudiation of the lease; that regardless of which theory an award of damages for loss of profits during the primary term of the lease might be based upon, there will inevitably be a fatal conflict with one of the adjudications made by the trial court; that in view of the existing fatal conflicts in the adjudications and findings and the further conflicts which would be added by such an award, and in the absence of a formal finding as to whether Carte did or did not accept the McKenzies' said repudiation, a judgment cannot properly be rendered allowing Carte a recovery of damages for losses during the primary term or otherwise on the present record.

I am firmly of the belief that the record herein does not afford a basis for any action by this Court other than a reversal of the trial court judgment and a remand of this cause for a new trial.

The problems in this case have arisen from the fact that neither Carte nor the trial court at any time made or determined any election between the inconsistent rights that accrued to Carte on account of the eviction and repudiation of the lease by the McKenzies. Because no election was ever made there has been produced a record involving a quagmire of uncertainties that cannot be resolved in this Court. There is,

in my opinion, no escape from the necessity of starting over in the trial court, with care being taken on the second trial to see that at some proper time the required election is made either by Carte or determined by the trial court.

I would reverse the judgment and remand the case for a new trial.